LOUIS R. PEPE ET AL. v. CITY OF NEW BRITAIN
(12950)

PETERS, C. J., HEALEY, SHEA, SANTANIELLO and KULAWIZ, Js.

Argued February 6—decision released April 21, 1987

*Joseph E. Skelly, Jr.,* for the appellant (defendant).

*Thomas F. Parker,* with whom was *Brenda M. Bergeron,* for the appellees (plaintiffs).

SHEA, J. The plaintiffs, a law firm and one of its members, brought this action to recover the reasonable value of legal services rendered on behalf of the common council of the defendant, the city of New Britain. The trial court, *Allen, J.,* found that, because the corporation counsel was disqualified from representing the common council in its dispute with the mayor, the common council had implied authority to engage independent counsel at the city's expense. Finding further that the council properly exercised that implied authority by retaining the plaintiffs pursuant to a resolution it had adopted, the court granted the plaintiffs' motion for summary judgment in respect to liability. After a further hearing on the issue of damages before the trial court, *Aspell, J.,* the plaintiffs recovered the sum of $23,513.74 and costs from the defendant. The defendant contests only the issue of liability.[1] We find no error.

---

[1] Although the defendant, in its preliminary statement of issues, raised claims of error dealing with the damages award, it has not pursued such claims on appeal and thus is deemed to have abandoned them. See *Blancato* v. *Feldspar Corporation,* 203 Conn. 34, 36 n.3, 522 A.2d 1235 (1987); *McHugh* v. *McHugh,* 181 Conn. 482, 490, 436 A.2d 8 (1980).

In 1976 and 1977 the defendant was receiving funds from the federal government pursuant to the Housing and Community Development Act of 1974, Pub. L. No. 93-383, 88 Stat. 633 (1974). A majority of the common council challenged the authority of New Britain's mayor, Matthew Avitabile, individually to execute on behalf of the city contracts requiring the expenditure of such funds. The council insisted that its approval was a requisite to any such expenditure, and therefore to the making of those contracts. Deciding that legal action was necessary to effectuate its challenge, the council, on January 4, 1977, over the mayor's veto, adopted "Resolution No. 12349." The resolution provided, "that effective upon passage of this resolution, the Common Council, upon approval of a select committee to be appointed by the Mayor Pro Tem and the Majority Leader, has the authority to retain legal counsel when it deems necessary and only for purposes involving City business; be it further resolved, that the powers conferred by this resolution, be and are hereby terminated on November 1, 1977."

In a memorandum dated February 2, 1977, Salvatore Gionfriddo, the majority leader of the common council, requested, "on behalf of the Common Council as a whole," the approval of the select committee "in order to retain Louis R. Pepe, Esq., of the firm of Alcorn, Bakewell & Smith." After the select committee had approved the retention of Pepe, ten members, or a two-thirds majority, of the common council, which had been informally polled, endorsed the selection. Five remaining members objected to representation by Alcorn, Bakewell & Smith, and instead requested the corporation counsel to appoint a special assistant corporation counsel to represent them.

Before the common council initiated its contemplated suit in opposition to Avitabile's assumption of control over the federal funds, three taxpayers brought an

action challenging the validity of Resolution No. 12349. *Grogan* v. *Common Council,* Superior Court, judicial district of Hartford-New Britain at New Britain, Docket No. 208674-3 (January 10, 1977). In order to avoid a conflict of interest in that taxpayers' suit, the corporation counsel declined to represent the common council, which consequently retained the plaintiff firm of Alcorn, Bakewell & Smith. The parties to the taxpayers' suit arrived at a settlement prior to trial, entering into a stipulation that the resolution would be in effect only in respect to the particular dispute between the council and the mayor.[2]

The common council, again represented by Pepe of Alcorn, Bakewell & Smith, subsequently brought suit against Avitabile in the United States District Court. *Common Council* v. *Avitabile,* United States District Court at Hartford, Docket No. H-77-231 (October 28, 1977). After that court rendered summary judgment in favor of Avitabile, the plaintiffs in the present case submitted their bills to the city of New Britain for services rendered on behalf of the council in both the taxpayers' suit and the federal suit. When the city refused to pay those bills, the plaintiffs, in 1980, brought the action that is now before us. In this appeal from the summary judgment rendered in favor of the plaintiffs, the defendant claims that, because the common council did not retain the plaintiffs by "a vote of the majority pursuant to a duly noticed and held meeting," which,

---

[2] Although that stipulation has not been filed as a part of the record in this case, the plaintiffs, in oral argument, said that this limitation upon the effectiveness of Resolution No. 12349 comprised the crux of the stipulation. In his sworn affidavit, dated May 23, 1985, Louis R. Pepe stated "[t]hat it was the intention of this stipulation, and it was so drawn, to permit the Common Council to employ the law firm of Alcorn, Bakewell & Smith to represent the Common Council in the taxpayers' suit and the suit to be brought against the Mayor regarding his authority under the Community Development Fund to act without Council approval and to permit payment by the City for the expenses and fees incurred therein."

the defendant maintains, is a general requirement of the city charter incorporated in Resolution No. 12349, such retention of the plaintiffs was not authorized by the resolution and was therefore illegal.

I

At the outset we address the contention of the plaintiffs that the issue raised by the defendant is not properly before us and that this appeal should therefore be dismissed. The plaintiffs first assert that the failure of the defendant to plead specially pursuant to Practice Book § 164[3] that the common council had not complied with Resolution No. 12349 precluded it from subsequently raising the issue at the summary judgment hearing. Prior to the day of that hearing, the only theory presented by the defendant, as alleged in its special defense, had been that the retention of the plaintiffs had contravened the city charter, which establishes the circumstances under which outside counsel may be employed. At the hearing, however, the defendant presented an affidavit and certain memoranda in which the assertion was made that the council had not properly followed the resolution. The plaintiffs did not object to the introduction of those materials.

It is clear that in deciding a motion for summary judgment the trial court may consider, in addition to the pleadings, "affidavits and any other proof submitted"

---

[3] Practice Book § 164 provides: "No facts may be proved under either a general or special denial except such as show that the plaintiff's statements of fact are untrue. Facts which are consistent with such statements but show, notwithstanding, that he has no cause of action, must be specially alleged. Thus, accord and satisfaction, arbitration and award, coverture, duress, fraud, illegality not apparent on the face of the pleadings, infancy, that the defendant was non compos mentis, payment (even though nonpayment is alleged by the plaintiff), release, the statute of limitations and res judicata must be specially pleaded, while advantage may be taken, under a simple denial, of such matters as the statute of frauds, or title in a third person to what the plaintiff sues upon or alleges to be his own."

by the parties. Practice Book § 384; see *Orticelli* v. *Powers,* 197 Conn. 9, 15, 495 A.2d 1023 (1985). Practice Book § 381 provides in part that "[s]upporting and opposing affidavits shall . . . set forth such facts as would be admissible in evidence . . . ." This court has often held that the failure to file a special defense may be treated as waived when no objection has been raised to the offer of evidence on the issue. See *Thompson & Peck, Inc.* v. *Harbor Marine Contracting Corporation,* 203 Conn. 123, 132, 523 A.2d 1266 (1987); *Damora* v. *Christ-Janer,* 184 Conn. 109, 112, 441 A.2d 61 (1981); *Royal Homes, Inc.* v. *Dalene Hardwood Flooring Co.,* 151 Conn. 463, 466, 199 A.2d 698 (1964). Because the plaintiffs did not object to the defense proffered by the defendant regarding Resolution No. 12349, which arguably should have been pleaded specially, facts relating to that defense would have been admissible in evidence. Thus, the defendant's failure to plead specially noncompliance by the common council with Resolution No. 12349 did not preclude the consideration by the trial court of that issue as presented in the affidavit and memoranda, because the failure of the plaintiffs to object thereto waived the pleading deficiency.

The plaintiffs' related assertion is that because the defendant introduced materials raising the noncompliance issue on the day of the summary judgment hearing, that issue was not timely raised and therefore not properly before the court. The relevant rule, found in Practice Book § 380, which deals with proceedings upon summary judgment motions, is that "[t]he adverse party *prior to the day* the case is set down for short calendar shall file opposing affidavits and other available documentary evidence." (Emphasis added.) Relying upon this court's recent decision in *Hughes* v. *Bemer,* 200 Conn. 400, 510 A.2d 992 (1986), the plaintiffs maintain that the use of the word "shall" in § 380 makes mandatory the filing of evidence prior to the day of the summary judgment hearing.

In *Hughes* v. *Bemer,* supra, this court construed the language of Practice Book § 155, which provides that an adverse party who fails to file a timely memorandum of law in opposition to a motion to strike "shall be deemed by the court to have consented to the granting of the motion." We ruled that such a filing is mandatory under § 155; *Hughes* v. *Bemer,* supra, 402; and therefore that the failure to file a memorandum in opposition to the motion to strike was a sufficient alternative ground upon which to uphold the granting of the motion. We declined to consider the substantive ground relied upon by the trial court, although the moving parties, as in this case, had not raised in the trial court noncompliance with the rule as a ground for granting the motion. Although § 380 declares that materials in opposition to a motion for summary judgment "shall" be filed the day before the hearing, it does not contain any provision corresponding to the dictate of § 155 that the consequence of noncompliance with the rule is that the delinquent party "shall be deemed by the court to have consented to the granting of the motion." In *Batick* v. *Seymour,* 186 Conn. 632, 645–46, 443 A.2d 471 (1982), we held that, despite the prescription of § 380 that " '[t]he adverse party . . . shall file opposing affidavits,' " the plaintiffs' failure to do so was not fatal under the circumstances of that case.[4] Although

[4] *Batick* involved an automobile accident between the parties resulting in personal injuries sustained by the plaintiff. In the second count of his complaint, the plaintiff sought to set aside an allegedly fraudulent conveyance of real property from the named defendant to his wife on the ground that the defendant's intent in making the transfer was to conceal such assets from the plaintiff. Discussing the plaintiff's failure to file an opposing affidavit in the summary judgment proceeding, we noted: "There is no reason to suppose that the plaintiff had personal knowledge of any of the facts relating to the transfer. His proper course would have been to file an affidavit stating that he could not, 'for reasons stated, present facts essential to justify his opposition . . . .' Practice Book § 382." *Batick* v. *Seymour,* 186 Conn. 632, 645, 443 A.2d 471 (1982). We nevertheless did not regard as fatal the plaintiff's failure to follow the procedure of explaining his predicament in accordance with § 382, "since his inability to file an opposing affidavit was obvious." *Batick* v. *Seymour,* supra, 646.

*Batick* dealt with the failure to file an opposing affidavit, whereas the case before us involves the timeliness of such a filing, the sentence from § 380, and therefore the word "shall," applies in both instances. We therefore adhere to our prior construction of the relevant language of § 380 and decline to construe such language as a jurisdictional barrier that the parties cannot waive or the court may not excuse under any circumstances. Cf. *Blancato* v. *Feldspar Corporation,* 203 Conn. 34, 36 n.3, 522 A.2d 1235 (1987) (language in Practice Book § 154 that each motion to strike raising any claim of legal insufficiency "shall distinctly specify the reason or reasons for each such claimed insufficiency" not considered jurisdictional).

We conclude that by failing to raise the defendant's noncompliance with § 380 in the trial court, the plaintiffs waived the exclusion of materials not filed "prior to the day" of the summary judgment hearing. Had the objection been timely raised, the trial court might well have postponed the hearing if either party had requested additional time. Since the trial court did not rely upon the late filing in granting the plaintiffs' motion for summary judgment, the court effectively excused the defect without objection by the plaintiffs and thus properly considered on its merits the defendant's contention that the retention of the plaintiffs as legal counsel was not authorized by Resolution No. 12349. Accordingly, we decline to dismiss the present appeal.

## II

We next turn to the merits of the defendant's appeal. It is important to note first that all of the parties agree that, in the dispute between the mayor of New Britain and the common council, representation by the corporation counsel of either side would have entailed

a conflict of interest.[5] Moreover, the defendant does not challenge the trial court's ruling that, where such a conflict of interest exists, the common council has implied authority to engage separate legal counsel. See *Krahmer* v. *McClafferty*, 282 A.2d 631, 633 (Del. Super. 1971); *Scottsbluff* v. *Southern Surety Co.*, 124 Neb. 260, 267, 246 N.W. 346 (1933); *Judson* v. *Niagara Falls*, 140 App. Div. 62, 67, 124 N.Y.S. 282 (1910); *Hanna* v. *Rewkowski*, 81 Misc. 2d 498, 500, 365 N.Y.S.2d 609 (1975); *Coventry School Committee* v. *Richtarick*, 411 A.2d 912, 916 (R.I. 1980). Finally, there is no contention that Resolution No. 12349, authorizing the common council to retain legal counsel, was either invalid or improperly adopted.[6]

## A

Resolution No. 12349 authorizes the common council, upon approval of a select committee, to retain legal counsel. The crux of the defendant's claim is that both the charter of the city of New Britain and our case law on the subject of municipal corporations mandate an interpretation of the resolution that requires the council to convene in a formal meeting in order to effectuate the retention of the particular legal counsel it has chosen. The defendant points first to § 502 of the charter,

---

[5] We note that in the taxpayers' suit the corporation counsel's office appointed Attorney Paul McQuillan as special assistant corporation counsel to represent the treasurer. In the subsequent federal suit by the common council against the mayor, Attorney Edward Lynch was retained by the city as a special assistant corporation counsel to represent the mayor.

[6] Compliance with § 134 of the charter of the city of New Britain, which may have been an alternative source of express authority for the common council to engage separate legal counsel in this conflict of interest case, is therefore not presently at issue. Section 134 provides: "Any board or commission of the city of New Britain, in any case in which a dispute exists between it and one or more other boards or commissions of said city, shall have the right to engage legal counsel to represent it in court in the event that it would be improper for the office of the corporation counsel to do so; provided the legal fee to be paid shall be subject to the prior approval of the chairman of the board of finance and taxation."

which provides in part: "All meetings of said common council duly warned and held, at which a majority of the members are present, shall be valid meetings, and the members present may proceed to transact any business properly before them . . . . All acts of said common council, at any meeting, shall be done by a vote of a majority of the members present." The defendant next refers to this court's decision in *Jack* v. *Torrant,* 136 Conn. 414, 420, 71 A.2d 705 (1950), in which we said: " 'It is a well-settled rule that when municipal councils or boards of any kind are called upon to perform legislative acts or acts involving discretion and judgment in administering the public affairs, *they can only act at authorized meetings* duly held. The council or board must meet and act as a board or council. The members cannot make a valid determination binding upon the corporation by their assent separately and individually expressed.' " (Emphasis in original.) 2 J. Dillon, Municipal Corporations (5th Ed.) § 501, p. 825; see also *Ziomek* v. *Bartimole,* 156 Conn. 604, 612, 244 A.2d 380 (1968); *Martin* v. *Lemon,* 26 Conn. 192, 193 (1857).

The plaintiffs, on the other hand, argue that their retention, once approved by the select committee, "was a fait accompli." Thus they agree with the trial court's assertion that "[i]t was unnecessary for the Common Council to meet again formally in order to approve the Select Committee's choice." It is evident that this view accords with the council's understanding of the process required by the resolution it had just adopted. In the area of administrative law it is a well established principle that courts should " 'accord great deference to the construction given the statute by the agency charged with its enforcement.' " *Hartford Principals' & Supervisors' Assn.* v. *Shedd,* 202 Conn. 492, 509, 522 A.2d 264 (1987); *Board of Education* v. *Connecticut State Board of Labor Relations,* 190 Conn. 235, 241,

460 A.2d 1255 (1983). Similarly, the interpretation of provisions of a city charter by the city council or other town authorities has been given considerable weight by courts construing and applying such provisions. See *Burwell* v. *Board of Selectmen,* 178 Conn. 509, 518, 423 A.2d 156 (1979); see also *Castaneda* v. *Holcomb,* 114 Cal. App. 3d 939, 945–46, 170 Cal. Rptr. 875 (1981); *Van Cleve* v. *Wallace,* 216 Minn. 500, 508, 13 N.W.2d 467 (1944); *Morey Engineering & Construction Co.* v. *St. Louis Artificial Ice Rink Co.,* 242 Mo. 241, 261–62, 146 S.W. 1142 (1912); 2 E. McQuillin, Municipal Corporations (3d Ed. 1979) § 9.22, p. 686.

A reasonable assumption following from this principle of interpretation is that, having properly performed its legislative function in adopting Resolution No. 12349 in accordance with the formalities mandated by the city charter, the common council concluded it had delegated the further administrative task of retaining counsel to the select committee. In other words, the council appears to have construed the resolution as embodying such a delegation. This court has stated that although a town council cannot delegate its legislative powers to others, "this rule is modified by the equally well supported and understood qualification that powers of a purely ministerial, administrative, or executive nature, may be delegated to a committee or some appropriate officer." *Donnelly* v. *New Haven,* 95 Conn. 647, 653, 111 A. 897 (1921); see also *Baker* v. *Kerrigan,* 149 Conn. 596, 600, 183 A.2d 268 (1962).

The actions of the common council in retaining the legal services of the plaintiffs upon approval of the select committee, but without a confirmatory majority vote taken at a formal meeting, therefore favor a construction of Resolution No. 12349 different from that advocated by the defendant. Nevertheless, the actions of the council in implementing their resolution do not unambiguously favor a construction consonant with

that endorsed by the plaintiffs. That the members of the common council were polled, albeit informally, after the select committee had approved the retention of the plaintiffs indicates that the council did not consider such approval alone as sufficient to implement the resolution. If we adhere to the notion that the common council's construction of the resolution it enacted, as indicated by its subsequent actions, ought to be accorded substantial deference, this circumstance tends to support the defendant's position that Resolution No. 12349 required action by the council subsequent to the approval given by the select committee. If further council action were necessary, however, such action, to be valid, could occur only at an authorized meeting duly held. *Jack* v. *Torrant,* supra.

Because we uphold the judgment of the trial court on an alternative ground, we need not pursue further the sinuous route to a definitive construction of Resolution No. 12349.

B

Although the plaintiffs as appellees have filed a statement of alternate grounds upon which to uphold the judgment rendered on damages; see Practice Book § 3012 (a) (now § 4013 [a] [1]); they have not done so in respect to the judgment on liability, at issue in this appeal. Nevertheless, this court is authorized to rely upon alternative grounds supported by the record to sustain a judgment. *Henderson* v. *Department of Motor Vehicles,* 202 Conn. 453, 461, 521 A.2d 1040 (1987); *W. J. Megin, Inc.* v. *State,* 181 Conn. 47, 54, 434 A.2d 306 (1980). Even if we were to have concluded that the trial court based its judgment on erroneous grounds, we would properly affirm the judgment "if the same result is required by law." *A & H Corporation* v. *Bridgeport,* 180 Conn. 435, 443, 430 A.2d 25 (1980); *Morris* v. *Costa,* 174 Conn. 592, 597–98, 392 A.2d 468 (1978).

It is clear that, under the circumstances of the present case, the common council had the authority to employ outside legal counsel. As stated, the inevitability of a conflict of interest effectively precluded the office of the corporation counsel from representing either the mayor or the common council in their dispute. The sole issue is whether the council adhered sufficiently to any formalities mandated by the city charter in acting to retain the plaintiffs. Because we hold that the defendant is equitably estopped from denying liability to the plaintiffs, we need not resolve that issue.

"Contracts beyond the powers of a municipality are void." *Sheehan* v. *Altschuler,* 148 Conn. 517, 526, 172 A.2d 897 (1961). When an action of a municipal corporation is ultra vires because it represents an attempt to exercise powers the city does not possess, the doctrine of estoppel will not be applied to hold the city to promises made. The reason is that the city "cannot do indirectly what [it] cannot [do] directly, and [if] no power or authority [is] vested by law . . . no [ultra vires act of the city, or its officers or agents,] can be cured by aid of the doctrine of estoppel." *Edwards* v. *Kirkwood,* 147 Mo. App. 599, 615, 127 S.W. 378 (1910).

"Where the contract is one which the municipality had the power to make, [however,] it is possible for a court to hold that the municipality has, by taking the benefit of the contract, ratified it, or estopped itself from claiming it was not executed according to law."[7] *Bridgeport Brass Co.* v. *Drew,* 102 Conn. 206, 215, 128 A. 413 (1925); see *Vito* v. *Simsbury,* 87 Conn. 261, 265, 87 A. 722 (1913); *Rocky Hill* v. *Hollister,* 59 Conn. 434, 447, 22 A. 290 (1890); see also *John J. Brennan Con-*

[7] Although the line between ratification and estoppel has been called "shadowy"; 10 E. McQuillin, Municipal Corporations (3d Ed. 1981) § 29.103, p. 475; ratification that is implied from the conduct of a municipality generally involves "the element of estoppel . . . either as a minor or major element." Id.; cf. *Turney* v. *Bridgeport,* 55 Conn. 412, 418, 12 A. 520 (1887).

*struction Corporation, Inc.* v. *Shelton,* 187 Conn. 695, 712, 448 A.2d 180 (1982); *State ex rel. Gaski* v. *Basile,* 174 Conn. 36, 40, 381 A.2d 547 (1977). "A contract, invalid because made at a special meeting of which certain members had no notice, but which is legitimate and proper and within the scope of the council's power, will be enforced against the city where it has received the benefit of the contract. . . ." 1 J. Smith, Commentaries on the Modern Law of Municipal Corporations (1903) § 745, p. 746; see also *Hitchcock* v. *Galveston,* 96 U.S. 341, 351, 24 L. Ed. 659 (1877).

The record does not indicate that any objection to the representation of the council by the plaintiffs was made during either the taxpayers' suit or the federal action brought by the common council against the mayor. It was not until the plaintiffs had fully rendered the necessary legal services and had presented their bills for payment that the defendant contested the legality of the contracts by which they had been retained. Because benefits have certainly been conferred upon the defendant, it would not be just to allow the defendant to escape its obligation to compensate the plaintiffs for the reasonable value of their services by asserting that their retention had not been in accordance with required formalities. See *Trull* v. *Lobelville,* 554 S.W.2d 638, 642 (Tenn. 1976); *Denison* v. *Foster,* 28 S.W. 1052, 1053 (Tex. 1894); 1A C. Antieau, Muncipal Corporation Law (1987) § 10.56; cf. *Seif* v. *Long Beach,* 286 N.Y. 382, 36 N.E.2d 630 (1941) (where city council had not adopted resolution authorizing appointment of special counsel, and where mayor had no alternative source of express or implied authority to retain such counsel, city not estopped from challenging validity of employment contract). Accordingly, we affirm the judgment of the trial court.

There is no error.

In this opinion the other justices concurred.