[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, #133, PLAINTIFFS' COUNTER-MOTION FOR SUMMARY JUDGMENT, #136 CT Page 6069
ISSUES
1. Whether the court should grant the defendant Dowley's motion for summary judgment because there are no genuine issues of material fact regarding the defendant Dowley's second and fifth special defenses and whether the defendant Dowley is entitled to judgment as a matter of law.
2. Whether the court should grant the plaintiffs' motion for summary judgment because there are no genuine issues of material fact regarding the plaintiffs' cause of action against defendant Dowley and whether the plaintiffs are entitled to judgment as a matter of law.
FACTS
The following fact are alleged in the complaint and are not in dispute. The plaintiffs, Robert V. LaMarche, Harry G. Link and Russell E. Fowler, are citizens and taxpayers of the Town of Middlefield, Connecticut. The defendant Town of Middlefield (the "Town") is a municipal corporation existing under the laws of the State of Connecticut and operates under a Charter, effective December 1, 1987, which provides for a town meeting form of government. The defendant David G. Webster is the first selectman of Middlefield. The defendant Eleanor H. Burgess is a select-woman of Middlefield. The defendant Marianne Corona is and has been at all relevant times the chairman of the defendant Inland Wetlands Commission of the Town of Middlefield ("IWC").
On or about May, 1988, Marianne Corona and the IWC hired the defendant Attorney Michael F. Dowley to represent them with regard to a town referendum, the purpose of which was to abolish the IWC or to change its personnel.
The plaintiffs allege that the hiring of Dowley was illegal because it violated Charter Sections 706 D, 502, 404 A, 404 B, 404 F (1), 404 F (3), 404 F (4) 404 G, 606 and 1011.
The plaintiffs further allege that on or about June 13, 1988, the defendant Board of Finance of Middlefield illegally appropriated funds to pay for the hiring of Attorney Dowley in violation of Chapter X of the Charter and Charter Sections 404 A, 404 B, 404 F (1), 404 F (3), 404 F (4), 404 G, 502 and 706(D). CT Page 6070
On June 14, 1988, then first selectman James Blois notified the IWC and the Board of Finance that the Board of Selectmen did not approve of the hiring of Attorney Dowley and that any debt incurred by the hiring of Attorney Dowley would not be paid by the Town of Middlefield.
Attorney Dowley entered upon the employment for which he was hired and by invoice dated December 6, 1988, billed the IWC for $3,929.00.
On December 14, 1988, then first selectman James Blois sent a memo to the Board of Selectmen, Marianne Corona and the members of the IWC and the Board of Finance which indicated that the hiring of Attorney Dowley was in violation of the Charter and that he would request the Board of Selectmen not to pay the bill.
At a special meeting of the IWC on December 17, 1988, the IWC voted to request the Board of Finance to reappropriate money for Attorney Dowley's fee.
On October 2, 1989, a town meeting was held at which a resolution to approve the payment of Attorney Dowley's fees was defeated by a vote of 56 to 17.
Subsequent to this meeting, Attorney Dowley instituted a law suit against the Town of Middlefield seeking payment for services rendered.
On November 20, 1990, the current Board of Selectmen, including defendants David Webster and Eleanor Burgess, met at a regular meeting and, upon motion, voted not to follow the town meeting vote of October 2, 1989 and voted to settle the law suit brought by Attorney Dowley pursuant to charter Sec. 404 F (3). The plaintiffs allege that this vote of the selectmen violated Chapter X of the Charter and Charter Sections 706 D, 1005 and 1011 and that vote was an ultra vires act.
The plaintiffs allege that they will be irreparably injured if the Town pays Attorney Dowley's bill.
Attorney Dowley now moves for summary judgment on the ground that the Town is equitably estopped from refusing to pay his bill. The plaintiffs also move for summary judgment on the grounds that the hiring of Attorney Dowley violated the Charter, that it was an ultra vires act, that estoppel is inapplicable and that the vote of the selectmen which settled Attorney Dowley's law suit was a nullity because CT Page 6071 the law suit had no basis. The pleadings are closed as to the plaintiffs and Attorney Dowley.[1] The plaintiffs and Attorney Dowley have filed memoranda and appended appropriate documentation thereto.
DISCUSSION
 "`Practice Book Sec. 384 provides that summary judgment "shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving part is entitled to judgment as a matter of law."'" Gurliacci v. Mayer, 218 Conn. 531, 562-62, 590 A.2d 914 (1991).
Zauner v. Brewer, 220 Conn. 176, 180, 596 A.2d 388 (1991).
"[T]he party seeking summary judgment has the burden of showing the nonexistence of any material fact." Connell v. Colwell, 214 Conn. 242, 246, 571 A.2d 116 (1990) (citations omitted). "In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party." Id., 246-47 (citations omitted). "To satisfy his burden the movant must make a showing that it is quite clear what the truth is, and that excludes any real doubt as to the existence of any genuine issue of material fact." Fogarty v. Rashaw,193 Conn. 442, 445, 476 A.2d 582 (1984) (citation omitted).
There is no question that Charter Sec. 706 D vests in the Board of Selectmen the sole express power to retain outside counsel. Attorney Dowley argues, however, that pursuant to the holding of the court in Pepe v. New Britain, 203 Conn. 281, 524 A.2d 629 (1987), the Town is equitably estopped from refusing to pay his bill.
In Pepe, supra, a dispute existed between the mayor and the common council of the City of New Britain (the "City") regarding the execution of certain contracts. Pepe v. New Britain, supra, 283. The common council voted to hire outside counsel. Id. The common council brought suit against the mayor and lost. Id., 284. The outside counsel then sued the common council to collect attorney's fees. Id. The trial court rendered summary judgment in favor of the outside counsel holding that "because the corporation counsel was disqualified from representing the common council in its dispute with the mayor, the common council had implied authority CT Page 6072 to engage independent counsel at the city's expense." Id., 282.
The City appealed on the grounds that although the resolution authorizing the common council to retain independent counsel was valid, the common council did not follow the requisite formalities in effectuating its selection of the particular legal counsel it had chosen. Id., 289. The Supreme Court noted that the parties agreed that it would have been a conflict of interest for the corporation counsel to represent either the mayor or the common council and that where such a conflict exists, the common council has the implied authority, as well as the express authority derived from the City Charter to retain independent counsel. Id., 288-89 n. 6. The Pepe court held that:
 "Contracts beyond the powers of a municipality are void." Sheehan v. Altschuler, 148 Conn. 517, 526, 172 A.2d 897 (1961). When an action of a municipal corporation is ultra vires because it represents an attempt to exercise powers the city does not possess, the doctrine of estoppel will not be applied to hold the city to promises made. The reasons is the city "cannot do indirectly what [it] cannot [do] directly, and [if] no power or authority [is] vested by law . . . no [ultra vires act of the city, or its officers or agents,] can be cured by aid of the doctrine of estoppel." Edwards v. Kirkwood, 147 Mo. App. 599, 615, 127 S.W. 378 (1910).
 "Where the contract is one which the municipality had the power to make, [however,] it is possible for a court to hold that the municipality has, by taking the benefit of the contract, ratified it, or estoppel itself from claiming it was not properly executed according to law." Bridgeport Brass Co. v. Drew, 102 Conn. 206, 215, 128 A. 413
(1925); see Vito v. Simsbury, 87 Conn. 261, 265, 87 A. 722 (1913); Rocky Hill v. Hollister, 59 Conn. 434 447, 22 A. 290 (1890); see also John J. Brennan Construction Corporation, Inc. v. Shelton, 187 Conn. 695, 712, 448 A.2d 180 (1982); State ex. rel. Gaski v. Basile, 174 Conn. 36, CT Page 6073 40, 381 A.2d 547 (1977).
Id., 293-94 (footnote omitted) (alterations in original).
The Pepe court concluded that because no objections were made to the hiring of the outside counsel and because the City had not contested the validity of the contracts with the outside counsel until after the counsel had fully rendered the necessary legal services and because a benefit had certainly been conferred on the city, that "it would not have been just to allow the [City] to escape its obligation to compensate the [outside counsel] for the reasonable value of [its] services by asserting that [its] retention had not been in accordance with the required formalities." Id., 294 (citations omitted).
 "Under our well-established law, any claim of estoppel is predicated on proof of two essential elements: the party against whom estoppel is claimed must do or say something calculated or intended to induce another party to believe that certain facts exist and to act on that belief; and the other party must change its position in reliance on those facts, thereby incurring some injury. [Citations omitted.]" Zoning Commission v. Lescynski, [188 Conn. 724, 731, 453 A.2d 1144 (1982)]. In addition, estoppel against a public agency is limited and may be invoked: (1) only with great caution; (2) only when the action in question has been induced by an agent having authority in such matters; and (3) only when special circumstances make it highly inequitable or oppressive not to estop the agency. Id.; [Citation omitted.] As noted, this exception applies where the party claiming estoppel would be subjected to substantial loss if the public agency were permitted to negate the acts of its agents. "`[I]t is the burden of the person claiming estoppel to show that he exercised due diligence to ascertain the truth and that he not only lacked knowledge of the true state of things but had no CT Page 6074 convenient means of acquiring that knowledge.' [Citation omitted.]" Reinke v. Greenwich Hospital Assn., 175 Conn. 24, 28-29, 392 A.2d 966 (1978).
Kimberly-Clark Corporation v. Dubno, 204 Conn. 137, 148,527 A.2d 679 (1987).
Because the Town had the express authority to hire outside Counsel such as Attorney Dowley by virtue of Charter Sec. 706 D, the hiring of Attorney Dowely was not an ultra vires act. 10 McQuillin, Municipal Corporations, (3d Ed. Rev.) Sec. 29.10. There is no question but that the town received the benefit of Attorney Dowley's representation of the IWC. See Pepe v. New Britain, supra, 294; Affidavit of Attorney Dowley, appended to Attorney Dowley's memorandum. Indeed, it is clear that the Town Attorney would have a conflict of interest regarding actions taken by the Board of Selectmen to disband or transfer the IWC. See Rules of Professional Conduct 1.7; see also Answer to Request for Admissions of Facts, appended to Attorney Dowley's memorandum. Although the Town's first selectman objected to the hiring of Attorney Dowley by sending a letter to the Board of Finance and to the IWC, there is no allegation that a copy of this letter was sent to Attorney Dowley. The plaintiffs have not alleged the existence of any other objection until the vote at the public meeting of October 2, 1989, well after Attorney Dowley had completed all necessary legal services an, submitted his bill on December 8, 1988.
Under these circumstances, the doctrine of equitable estoppel prevents the Town from challenging the validity of the hiring of Attorney Dowley. The IWC solicited the professional services of Attorney Dowley. Attorney Dowley could reasonably have believed that the Town Attorney was disqualified and therefore, given the court's statements in Pepe v. New Britain, supra, that the IWC was entitled to hire its own legal counsel despite the Charter provisions. There is no allegation that any objection was sent to Attorney Dowley. It would be highly inequitable to allow the Town to escape from liability now that Attorney Dowley has finished rendering legal services which benefited the town. Additionally, there was no convenient way for Attorney Dowley to divine whether the Board of Selectmen objected to his representation of the IWC without some action on the part of the Board. See also Bridgeman v. Derby, 104 Conn. 1,12, 132 A. 25 (1926); 10 McQuillin, Municipal Corporations, (3d Ed. Rev.) Sec. 29.17; 56 Am.Jur.2d, Municipal Corporations, Sec. 528 (when a contract with a municipality CT Page 6075 is made by the wrong municipal officer, the municipality may be held on an implied contract where the municipality receives the benefit of the contract).
Furthermore, where a municipal attorney is disqualified by virtue of a conflict of interest between municipal boards, these municipal boards have the inherent power to hire outside counsel for the purposes of representation in matters where the municipal attorney is disqualified. Pepe v. New Britain, supra, 288-89 n. 6. "[W]hen conflict exists [between municipal boards] and regardless of the Charter provisions the better reasoned legal authorities clearly hold that both parties are entitled to their own representation, in this instance independent counsel . . ." Krahmer v. McClafferty, 282 A.2d 631, 633 (Del.Super., 1971). Accordingly, despite the lack of express authority in the Charter, the IWC had the implied authority to retain Attorney Dowley at the expense of the Town of Middlefield due to the conflict of interest of the Town Attorney.
Additionally, the Board of Selectmen are expressly authorized to settle law suits against the Town pursuant to Charter Sec. 404 F (3). The plaintiffs argue that this power does not allow the Board of Selectmen to settle suits based on void claims. The argument is inapplicable here because the Board of Selectmen could reasonably have concluded at the time it acted, as this court does now, that Attorney Dowley's claims were valid. Selectmen's action on November 20, 1990 was a valid exercise of its power and not an ultra vires act.
CONCLUSION
For all the foregoing reasons, the court grants Attorney Dowley's motion for summary judgment because there are no genuine issues of material fact regarding Attorney Dowley's second and fifth special defenses and Attorney Dowley is entitled to judgment as a matter of law. Accordingly, the court denies the plaintiff's motion for summary judgment because the plaintiffs are not entitled to judgment as a matter of law.
AUSTIN, J.