[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The above-captioned case is a declaratory judgment action in which the plaintiff Board of Police Commissioners of the Town of Madison seeks a declaration that an agreement to allow the defendant to purchase pension credits was void and unenforceable.
The defendant moved to dismiss and also to strike the amended complaint on the ground that the dispute was one that the parties had agreed to submit to arbitration. The court, Fracasse, J., denied both motions. The defendant filed an answer to the amended complaint.
On the date set for a nonjury trial, counsel for both parties filed an eleven page stipulation of facts and thirteen stipulated exhibits. The parties stipulated that the arbitrator to whom the defendant's grievance was assigned had granted the plaintiff's CT Page 9519 motion to defer arbitration and that the arbitrator had stated in that ruling "it is clear that the Connecticut Superior Court would have primary jurisdiction and the court would not be bound by my ruling." (Exhibit M, p. 2).
The parties have stipulated that "there are actual bona fide and substantial questions of law which must be settled by the court" and that "there is no other forum appropriate for the resolution of these questions of law." (Stipulation, para. 21 and 22).
No party claims noncompliance with any provision of P.B. § 390(d). Because the amended complaint seeks a declaratory judgment as to an agreement to which the plaintiff and the defendant are the only parties, the court finds that there is no necessity for notice to any other person or entity, and none has sought to participate.
Arbitrability
Since the contract of which the disputed provision is a part provides for arbitration to resolve disagreements, the parties resorted first to an arbitrator. His declaration, correct or not, that the issue presented is one over which this court has "primary jurisdiction," has been acquiesced to by both parties. The court will construe their submission of the issues to this court as a mutual waiver of their contractual right to have the issue decided by an arbitrator as set forth in their agreement.
Facts
The court finds that on January 23, 1987 the Board of Police Commissioners, by its chairman, and the defendant signed an employment agreement that stated the terms and conditions of the defendant's employment as chief of police of the town of Madison for the period February 1, 1987 to February 16, 1990 ("first agreement"). On June 20, 1990, the parties signed another employment agreement for the period February 16, 1990 to February 16, 1993. ("second agreement"). Neither agreement was approved by the Madison Board of Selectmen or by a vote at a Town Meeting.
The first agreement contained the following provision with regard to the defendant's retirement benefits: "E. Retirement Benefits. The Chief shall be eligible to participate in the town Pension Plan covering employees in the Department of Police CT Page 9520 Services." It contained no provisions with regard to obtaining credit in the calculation; of retirement benefits for prior municipal police service elsewhere.
The second agreement contained the following provisions with regard to the defendant's retirement benefits:
IV. E. Retirement Benefits
 The chief shall continue to be eligible to participate in the Town Pension Plan covering the Department of Public Services. Any future contributions that he is required to make to such system shall be made on his behalf by the Town of Madison as an additional fringe benefit.
 The chief shall also be allowed to buy back all prior municipal police service time at the rate of $750 per credit year upon agreement of the Police Retirement Board. (emphasis supplied).
The Town Pension Plan referred to in both the first and second agreements was established on July 1, 1971, and amended on March 15, 1986. The plan defines "Credited Service" for purposes of calculating retirement benefits as follows:
2.28 Credited Service
 Credited service shall mean the total period of employment as an Employee as shown on the payroll records of the Town commencing on the date of the Employee's last employment and continuing to the date of death, retirement, or termination of such employment. Credited service shall not include any other employment with the Town of Madison.
Up to and including August 6, 1991, the Town Pension Plan contained no provision for purchase of years of credit for service in other municipalities.
By its terms, at Section 11.1, the pension plan may be "wholly or partially amended by the Employer." "Employer" is not separately defined in the pension plan. At Sec. 2.8, the pension plan states under the definition of "Town" that "`Town' or `Employer' may be used interchangeably to mean Town of Madison, and any other associated Employers." The "Employer" that is the signatory to the pension Plan is "Employer: Town of Madison," and CT Page 9521 the actual official signing on behalf of that employer was the First Selectman.
At a December 8, 1988 meeting of the Madison Police Retirement Board, that board discussed a request by the defendant to transfer credits from prior municipal service (apparently, service with other municipalities) to the Madison pension plan. At its May 11, 1989 meeting, the Police Retirement Board voted to assess the defendant $750 per year to purchase credits for prior service to be applied for retirement purposes in the Madison Police Retirement Fund. The defendant agreed to this assessment as to 14.5 years of prior service to be added to his actual service in the employ of the Town of Madison.
At a meeting held on March 2, 1989, the Retirement Board passed a motion allowing members of the police department to purchase retirement credits. On May 11, 1989, the retirement board voted to assess the defendant $750 per year to purchase such credits.
In November 1989, the Town Counsel advised the Retirement Board that its votes allowing purchases of credit constituted amendments to the pension plan and that such amendments required approval of the Board of Selectmen, Board of Finance and Town Meeting. At its March 28, 1990 meeting, the retirement board acknowledged receipt of $750 from the defendant and stated in its minutes that "it was decided that the checks from each of the applications be forwarded to Marshall Smith (Chairman) who will in turn deliver to the First Selectman to be held in escrow until approval." On June 18, 1990, the retirement board received an actuarial calculation that the actual cost to the town for allowing the defendant to purchase additional credited service for $750 per year was $55,402.
The board of selectmen took the position that an employee could not be allowed to obtain additional credited service in the pension plan by paying sums for such credits and that the retirement bond was without authority to amend the plan to so allow. Having advised the retirement board of this position by a letter on June 17, 1991, on October 15 1990, the board of selectmen rejected the second employment agreement entered into between the Board of Police Commissioners and the defendant on June 20, 1990 "to the extent that it exceeds the powers of a police commissioner by calling for expenditures of funds beyond the current authorized budget." CT Page 9522
Having been advised that it lacked authority to amend the pension plan and that the first selectman would not deposit the defendant's check, the retirement board returned that payment to the defendant in August 1991.
Discussion
Neither party has filed a brief. Instead, they have asked this court to consider the positions they stated in briefs filed with the arbitrator and the lengthy stipulation of facts and documentary evidence.
The court construes the crux of the issue to be whether the retirement board had legal authority to authorize the defendant to obtain credits in the plan by means other than those set forth in the plan. This court finds that the retirement board did not, and that the contract provision by which the plaintiff purported to confer this benefit is void.
On its face, the retirement plan of the Town of Madison Police Department, Exhibit I, provides at § 2.25 for a "retirement board" and defines its authority as follows: "the Retirement Board . . . shall manage and administer the Plan, as provided in Article X." The document setting forth the plan contains no "Article X." Section 10, which may be the reference intended, discusses the authority of a separate entity, the Plan Trustee.
At Section 9.1A, the retirement plan provides that the "general administration of the Plan and the responsibility for carrying out the provisions of the plan shall be placed in the Retirement Board consisting of five members. . . ." Section 9.1B authorizes the retirement board to
 "construe this Plan and its constructions hereof and action hereon in good faith shall be final and conclusive. It may correct any technical defect or supply any inadvertent omission or reconcile any inconsistency in such manner and to such extent as it shall deem expedient to carry out the intention of the Plan. Notwithstanding the foregoing, said Retirement Board shall not construe the Plan or take any other action contrary to or inconsistent with the terms of any Collective Bargaining Agreement between the Town and the Madison Police Department Bargaining Unit. C. The CT Page 9523 Retirement Board shall provide rules and regulations not inconsistent with the terms and provisions hereof for the administration of the Plan and from time to time may amend or supplement such rules and regulations.
The above-cited text of the retirement plan does not give the retirement board authority to amend the provisions of the plan but only to effectuate those provisions through rules and procedures. The power to amend the plan is reserved in the document at Sec. 11.1 to the Employer, that is, the Town of Madison.
By Charter, at Article III, the Town of Madison legislates through the Town Meeting "except as otherwise provided in this Charter."
Other provisions of the Charter grant to both the Board of Selectmen and the Board of Police Commissioners certain enumerated powers as well as those powers allocated to those entities by the Connecticut General Statutes.
Whether the entity empowered to amend the police retirement plan is the Board of Selectmen or the Board of Police Commissioners is a moot point because the stipulated facts do not indicate that either board ever enacted any amendment to the retirement plan. Rather, the only public entity that passed such a purported amendment was the retirement board, which is not the "employer" pursuant to the provisions of the plan and is therefore not authorized to amend the plan pursuant to Sec. 11.1 of the plan itself.
At the time it entered into the second agreement with the defendant, the Board of Police Commissioners plainly, though erroneously, believed that the retirement board had authority to amend the plan, since the agreement was to allow the purchase of credits only "upon agreement of the Police Retirement Board." (Exhibit B, § E, p. 7).
The record does not reveal that either the Board of Police Commissioners or the Board of Selectmen or the Town Meeting ever voted to amend the plan to allow purchases of credit for years of service to other municipalities. A vote to that effect by the retirement board was beyond the power of that board, which had authority only to administer but not to amend the plan. Since no board with authority to amend the plan did so, the second CT Page 9524 agreement created a contract at variance with the retirement plan, which provided for credits only for actual service, not by purchase.
Contracts beyond the powers of the contracting municipal entity are void. Sheehan v. Altschuler, 148 Conn. 517, 526
(1961). When a municipal charter prescribes a particular procedure or entity by which a specific act is to be done or a power is to be performed, that procedure must be followed for the act to be lawful. Norwalk v. Board of Labor Relations, 206 Conn. 449,452 (1988); Caldrello v. Planning Board, 193 Conn. 387, 391
(1984).
Where a municipality has accepted the benefit of an ultravires contract, it maybe enforced, according to the holding inPepe v. New Britain, 203 Conn. 281, 293-94 (1987). That principle is not applicable in the case before this court since the payment that the defendant tendered as payment for years of credit was returned to him. At any rate, the defendant has not plead either estoppel or full performance.
The Connecticut Supreme Court has long held that "[b]ecause those who contract with a municipal corporation are charged with notice of . . . the powers of municipal officers and agents with whom they contract . . . it follows that if the . . . agent had in fact no power to bind the municipality, there is no liability on the express contract. . . ." Keeney v. Old Saybrook,237 Conn. 135, 149 (1996); Norwalk v. Board of Labor Relations,206 Conn. 449, 452 (1988). In Fennell v. Hartford, 238 Conn. 808, 814
(1996), the Court ruled that a municipal pension plan could not be varied by an implied contract arising from a manual indicating different benefits.
Having found that the retirement board had no authority to amend the retirement plan and having found that neither of the Town boards arguably authorized to act for the Town duly enacted such an amendment in the manner set forth in that plan, this court must conclude that the agreement at issue is void and unenforceable with respect to purchase of retirement credits since the retirement plan contained no provision for such credits.
Judgment shall enter declaring void and unenforceable the portion of the second employment agreement that concerned purchase of credits in the retirement plan by the defendant. CT Page 9525
Beverly J. Hodgson Judge of the Superior Court