GESMONDE, PIETROSIMONE, SGRIGNARI, PINKUS AND SACHS *v.* CITY OF WATERBURY
(14996)

PETERS, C. J., and CALLAHAN, NORCOTT, KATZ and PALMER, Js.

Argued October 26, 1994—decision released January 10, 1995

*Thomas K. McDonough,* assistant corporation counsel, with whom, on the brief, were *John H. Gorman,* assistant corporation counsel, and *Pamela J. Irwin,* assistant corporation counsel, for the appellant (defendant).

*Arthur S. Wells,* for the appellee (plaintiff).

CALLAHAN, J. The principal issue in this appeal is whether a municipal civil service commission has the implied authority to retain independent outside counsel when an obvious conflict of interest disqualifies the municipality's corporation counsel from representing the commission. The present case involves a claim for attorney's fees allegedly owed to the plaintiff law firm, Gesmonde, Pietrosimone, Sgrignari, Pinkus and Sachs, by the defendant city of Waterbury (city). The fees were incurred when the Waterbury civil service commission (commission) retained Attorney John Gesmonde to represent it in a dispute over the promotion of five Waterbury police officers to the position of detective.

In February, 1988, the Waterbury police department requested that five vacant detective positions be filled. Edmund Jayaraj, the commission's director of personnel, certified a list of five police officers who had attained the highest scores on a previously administered civil service examination given for the purpose of determining the most qualified candidates for the vacant posts. The superintendent of police, in consultation with then Mayor Joseph Santopietro and then corporation counsel Francis Donnarumma, however,

selected only one of the candidates on the certified list for promotion, and promoted four other candidates who were not on the certified list.[1]

The commission immediately questioned the promotions. The police union, Local 1237, American Federation of State, County and Municipal Employees (union), and the individual officers who were passed over for promotion also disputed the promotions. They pursued an action in the Superior Court seeking the ouster of the officers who were not appointed from the certified list. In that action, the city intervened against the union and appointed independent counsel to represent the appointed officers.[2] Although the commission was not a party, the commission chairman, Michael Stolfi, orally requested that Donnarumma provide independent counsel to represent the commission.[3] Although this request initially received favorable consideration by Donnarumma, it was denied after consultation with the mayor.

Because the commission was convinced that its interest in upholding the certified list would not be represented adequately by the corporation counsel, the commission formally requested, in writing, that it be allowed to hire independent counsel. The corporation

---

[1] Promoted were Edward Pekrul, twenty-fourth on the eligibility list, Joseph Pesce, second, James Clary, ninth, Phillip Rinaldi, seventeenth, and Edward Stephens, fortieth.

[2] The Superior Court action brought by the union and the individual officers was stayed pending arbitration, and eventually was dismissed after the arbitrator ruled that only the commission had standing to seek implementation of the certified list.

[3] The commission made the request for independent counsel through the corporation counsel pursuant to § 1903 of the Waterbury city charter, which provides in part: "QUALIFICATIONS, POWERS AND DUTIES. . . . [The corporation counsel] may, if, in his opinion, the interest of the city requires it, by and with the consent of the mayor, without regard to the civil service amendments, retain additional temporary counsel to aid him in behalf of the city in the conduct of his office."

counsel denied the commission's request. Thereafter, the commission unanimously voted to retain the plaintiff to represent the commission, and, accordingly, wrote to Gesmonde requesting that he "review and represent the Civil Service Commission including the instituting of law suits in the matter of the illegal appointments of Police Detectives and to take such action to assure that the Civil Service Rules and Regulations are upheld . . . ." The letter to Gesmonde directed that the bill for his services be sent to the city, in accordance with division 2, § 210 of the Waterbury city charter.[4]

The plaintiff thereafter brought two actions on behalf of the commission to rescind the promotions to detective of the officers who were not on the certified civil service list. The actions were a writ of quo warranto and a writ of mandamus.[5] The trial court rendered judgment in favor of the commission in both actions, finding that the appointments that had been made outside of the certified list were illegal. *Civil Service Commission* v. *Pekrul,* 42 Conn. Sup. 107, 601 A.2d 1044 (1991). In a per curiam opinion adopting the trial court's memorandum of decision, this court affirmed its judgments. *Civil Service Commission* v. *Pekrul,* 221 Conn. 12, 601 A.2d 538 (1992).

After the appeal to this court had been decided, the plaintiff requested payment for its legal services from the city. The request was denied. The plaintiff then filed

---

[4] Division 2, § 210 of the Waterbury city charter provides: "FINANCIAL SUPPORT FROM CITY. The financial authorities of the City of Waterbury shall provide necessary funds to carry out the purpose of this [civil service] Charter Amendment, and shall provide the personnel director and his department with adequate office space, equipment and facilities."

[5] Under Connecticut law, both actions are necessary to accomplish the desired result: quo warranto to remove the incumbents, and mandamus to secure the appointments of the five highest ranking individuals on the commission's list. *Civil Service Commission* v. *Pekrul,* 41 Conn. Sup. 302, 303–304, 571 A.2d 715 (1989).

this action alleging a breach of contract for legal services, or, in the alternative, a quantum meruit count for the fair value of the legal services rendered by it.[6] After a trial, the court concluded that the commission had been authorized to hire the plaintiff, that a binding contract existed and that the plaintiff was entitled to legal fees in the amount of $41,164.99.[7] After the trial court denied the city's motion for a new trial, the city appealed from the judgment of the trial court to the Appellate Court, and we transferred the appeal to this court pursuant to Practice Book § 4023 and General Statutes § 51-199 (c).

On appeal, the city claims that the trial court improperly: (1) concluded that the commission had the authority to hire the plaintiff and that the city was bound to pay for the services that the plaintiff had rendered to the commission; (2) issued its memorandum of decision without having considered the city's trial brief; (3) determined that the city's trial brief had not been timely filed; and (4) denied the city's motion for a new trial. We affirm the judgment of the trial court.

I

The city first argues that the commission lacked the authority to bind the city contractually to fund the plaintiff's legal services to the commission.[8] The city's

---

[6] Because we affirm the judgment of the trial court on the contract claim and because the quantum meruit issue was not briefed by the parties, we need not address this alternative count.

[7] The trial court later granted the plaintiff's motion for rectification and awarded interest on the judgment at 12 percent pursuant to General Statutes § 52-192a, because the city did not accept the plaintiff's November 30, 1992 offer of judgment.

[8] On appeal, the city also argues that no contract existed between the commission and the plaintiff because there was no retainer agreement that conformed to rule 1.5 of the Rules of Professional Responsibility. Rule 1.5 addresses only the issue of the reasonableness of attorney's fees and, therefore, is inapposite as to whether a contract for legal services existed. Moreover, the trial court concluded that there was an agreement between the

argument raises an issue of first impression for this court. In *Pepe* v. *New Britain,* 203 Conn. 281, 524 A.2d 629 (1987), we affirmed the trial court's conclusion that the New Britain common council had the implicit authority to enact a resolution allowing it to hire independent counsel in a dispute between the mayor and the common council, where an obvious conflict of interest existed for the city's corporation counsel. "[W]here such a conflict of interest exists, the common council has implied authority to engage separate legal counsel." Id., 289. On appeal, however, the defendant in *Pepe* did not contest the trial court's ruling on that particular point. Moreover, the common council, a legislative body, is of a different genre than a commission.

Under the circumstances of this case, we conclude nonetheless that, because of the conflict of interest between the commission and the corporation counsel who ordinarily would have represented the commission, the commission had the inherent power to hire outside counsel for the purposes of representation of its interests. As the record shows, the corporation counsel was faced with a direct conflict between the city's position and that of the commission regarding the promotion of the five police officers to detective. The corporation counsel supported the mayor's position that the officers were properly promoted despite the fact that the civil service list was ignored.[9] Moreover, in a proceed-

---

commission and the plaintiff regarding representation in this matter, for a fee of $85 per hour. The dispositive issue is not whether a contract existed, but, rather, whether the commission had the authority to bind the city to fund the services rendered.

[9] In response to the question "did you ever speak to the mayor about his position concerning the appointments that were at issue," Stolfi testified at trial that "in the beginning [the mayor] tried to get me to compromise my vote and not vote for making it a promotion, number one. Number two, when he was against us doing this because it was stated to me in this fact that it's our turn to have patronage now; we're in office, the Democrats had it all this time; now it's our turn."

ing before the state department of labor, the corporation counsel had argued that police officers[10] could be promoted to detective regardless of the commission's certified list. When the labor board ruled that the promotions had been in violation of the charter and the collective bargaining agreement, the city appealed the decision to the Superior Court. Although that court upheld the labor board's decision, the contrary position was vigorously urged upon the court by the corporation counsel on behalf of the city. *Waterbury* v. *State Board of Labor Relations*, Superior Court, judicial district of Hartford-New Britain at Hartford, Docket No. 390686 (November 21, 1991). It is apparent that not only was the corporation counsel opposed to the commission's position, but was actively resisting it every step of the way.[11] Because of this obvious conflict of interest, the commission had the implied authority to hire independent counsel to represent its interests.

The weight of authority supports our conclusion. "As a general rule, when a municipal corporation has legal counsel charged with a duty of conducting the legal business of a governmental agency, contracts with other attorneys for additional or extra legal services are void." *Coventry School Committee* v. *Richtarik,* 122 R.I. 707, 715, 411 A.2d 912 (1980). There is, however, a well recognized exception to the general rule. "Notwithstanding lack of specific statutory authority, a municipal board or officer possesses implied authority to employ counsel in the good faith prosecution or defense of an action undertaken in the public interest, and in conjunction with its or his official duties where

---

[10] The labor board action involved only three officers, Edward Stephens, James Egan and Francis Dabbo, and arose from a 1987 agreement between the city and the union. Only Stephens was involved in the actions brought by the plaintiff in this case.

[11] At oral argument before this court, counsel for the city conceded that he made the decision in 1991 not to appeal from the judgment of the Superior Court that affirmed the labor board decision.

the municipal attorney refused to act, or was incapable of, or was disqualified from, acting. . . . This authority is necessarily implied in order to enable the board to effect the purposes of its creation and to allow it to properly function. . . . It should be abundantly clear that in view of the stringent requirements that must be satisfied, the policy underlying the general rule of express authority is certainly not compromised by this exception." (Citations omitted.) *Cahn* v. *Huntington,* 29 N.Y.2d 451, 455, 278 N.E.2d 908, 328 N.Y.S.2d 672 (1972); see *Coventry School Committee* v. *Richtarik,* supra, 715 (same); *State* v. *Volkmer,* 73 Wash. App. 89, 94, 867 P.2d 678 (1994) (same); see also *Riley, Hoggatt & Suagee, P.C.* v. *English,* 177 Ariz. 10, 13, 864 P.2d 1042 (1993) (inherent power of justice of peace to hire counsel to assert justice of peace's position in litigation against other branches of government); *Krahmer* v. *McClafferty,* 282 A.2d 631, 633 (Del. Sup. 1971) ("when conflict exists and regardless of the Charter provisions the better reasoned legal authorities clearly hold that both parties are entitled to their own representation . . ."); *Hanna* v. *Rewkowski,* 81 Misc. 2d 498, 500, 365 N.Y.S.2d 609 (1975) ("[i]t is further clear that the courts in this State have recognized an implied authority in municipalities for various boards or branches to appoint independent counsel in cases where there is a clear conflict of interest despite the fact that applicable statutes make no such provision"); 10 E. McQuillin, Municipal Corporations (3d Ed. 1990) § 29.12 ("[c]ontracts for outside legal services are sometimes sustained . . . where the city attorney is ill, disqualified, absent, or unavailable; or where the legal official of the corporation refuses to appear and perform the necessary services; or where he or she has, or represents, adverse interests . . ."), citing *Pepe* v. *New Britain,* supra, 203 Conn. 281.

The city also claims that even if the commission had authority to hire independent counsel, the plaintiff's involvement in this dispute was superfluous because there were other ongoing legal proceedings at the relevant time that eventually resulted in the same outcome, i.e., a determination that promotions outside of the certified civil service list were illegal. We disagree. While it is true that other proceedings were in progress concerning the promotion of individual police officers in Waterbury, in neither of those actions were the particular interests of the commission in maintaining the integrity of the civil service represented.[12]

The primary purpose of the civil service rules is to "provide for the recruitment and development of the best available employee for each position in the classified service of the city of Waterbury at all times. They provide for establishing orderly procedures for administering the Civil Service System in such a way to insure . . . [t]hat all appointments and promotions to positions in the classified service shall be on the sole basis of merit and fitness, which, as far as practicable, shall be ascertained by means of competitive examinations." City of Waterbury Civil Service Rules § 2. The main function of the commission is to administer objective examinations to job candidates, to maintain lists that rank the candidates according to test scores and to give the highest ranking candidates' names to the authority who will appoint the most qualified candidates to the available positions. It is that function that the commission sought to vindicate, and it was not clear that that function would have been vindicated in the actions pursued by the police union or by the individual officers. Whether the certified civil service lists, established by the commission, could be disregarded by the mayor

---

[12] See footnotes 2 and 10.

and other officials of the city, however, was the only issue in the legal actions initiated and brought to a successful conclusion by the plaintiff.

"[A] city, including its commissions, ha[s] no source of authority beyond the charter. '[T]heir powers are measured and limited by the express language in which authority is given or *by the implication necessary to enable them to perform some duty cast upon them by express language.' Turney* v. *Bridgeport,* 55 Conn. 412, 414, 12 A. 520 (1887)." (Emphasis added.) *Parretta* v. *New Britain,* 185 Conn. 88, 92–93, 440 A.2d 823 (1981). Division 2, § 210 of the Waterbury city charter provides that the "financial authorities of the City of Waterbury shall provide necessary funds to carry out the purpose of this Charter Amendment . . . ."[13] Because the plaintiff represented the commission in a defense of the commission's essential purpose, the plaintiff's legal fees were "necessary funds" under § 210 that the "financial authorities" of the city were required to provide to carry out the purpose of the civil service charter amendment.

Under the circumstances, we conclude that a direct and obvious conflict of interest existed for the corporation counsel and that he would have been disqualified from representing the commission even if he had so desired. Additionally, the very purpose of the civil service commission was being challenged by the blatant disregard of the certified civil service list by the appointing officials. Therefore, in order for its unique

---

[13] Division 2, § 212 provides that "[p]rovisions of the Charter of the City of Waterbury, or provisions of any ordinance of the City of Waterbury inconsistent with or contrary to this Charter Amendment are hereby amended." The city argues that § 1903 of the charter gives the sole authority to appoint counsel to the corporation counsel. Section 212, however, amends § 1903 in that it is inconsistent with the charter amendment. Therefore, an implied authority can be found notwithstanding the express provisions of § 1903. See footnote 3.

interests to be represented in the underlying dispute the commission had the implied authority, under the facts of this case, to engage the plaintiff's legal services. We conclude, therefore, that the city was legally obligated to provide the funds to pay for those services.

## II

In its memorandum of decision, the trial court noted that while the plaintiff had filed a "comprehensive brief; the [city] has filed no brief" as ordered by the trial court. In fact, however, the city had filed a trial brief that had escaped the court's attention. Although at a hearing on the city's motion for a new trial the trial court found that the city's brief had not been timely filed, it did consider the brief stating: "I am going to find that the brief of the . . . City of Waterbury, was not timely filed. However, I think under the circumstances the court should consider the brief. And, I have done so."

The city argues that the trial court improperly (1) had ruled that its trial brief had not been filed in a timely manner and (2) had denied its motion for a new trial having failed to consider the city's brief before composing its memorandum of decision. " 'Appellate review of a trial court's decision granting or denying a motion for a new trial must take into account the trial judge's superior opportunity to assess the proceedings over which he or she has personally presided. . . . [W]e have . . . accordingly confined our role to a determination of whether there has been an abuse of discretion.' " *State* v. *Ross,* 230 Conn. 183, 227–28, 646 A.2d 1318 (1994), quoting *State* v. *Hammond,* 221 Conn. 264, 269–70, 604 A.2d 793 (1992).

Because the trial court considered the city's motion for a new trial as a motion to reconsider, we need not reach the issue of whether the court properly found that the city's trial brief was not timely. The court correctly

determined that its failure initially to consider the city's trial brief after a full trial on the merits did not meet the standards for a new trial pursuant to General Statutes § 52-270.[14] Instead, the court reconsidered its decision in light of the missing brief and confirmed its original ruling. We conclude that the trial court did not abuse its discretion.

The judgment is affirmed.

In this opinion the other justices concurred.

[14] General Statutes § 52-270 provides in relevant part: "CAUSES FOR WHICH NEW TRIALS MAY BE GRANTED. (a) The superior court may grant a new trial of any action that may come before it, for mispleading, the discovery of new evidence or want of actual notice of the action to any defendant or of a reasonable opportunity to appear and defend, when a just defense in whole or part existed . . . ."