1999 UT 73

SALT LAKE COUNTY COMMISSION,
Brent Overson, Chairman, Mary Calla-
ghan and Randy Horiuchi, Commission-
ers, Plaintiff and Appellee,

v.

SALT LAKE COUNTY ATTORNEY
Douglas R. Short, in his official ca-
pacity, Defendant and Appellant.

No. 980074.

Supreme Court of Utah.

Aug. 3, 1999.

Randy L. Dryer, James T. Blanch, Salt Lake City, for plaintiff.

Mary Anne Q. Wood, Larry S. Jenkins, Russell C. Skousen, Salt Lake City, for defendant.

ZIMMERMAN, Justice:

¶ 1 The Salt Lake County Commission ("Commission") filed this declaratory judgment action against the Salt Lake County Attorney, Douglas Short ("County Attorney"), in an effort to resolve a number of outstanding disagreements between the Commission and the County Attorney over their relative roles in Salt Lake County Government. The Commission then sought summary judgment asking the court to hold that: (i) as an attorney, the County Attorney is subject to the direction of the Commission as in any traditional attorney-client relationship; (ii) the Commissioners have the authority to retain independent counsel at county expense when the County Attorney has a conflict of interest or is "otherwise unwilling or unable"

to represent them, and (iii) the Commission may authorize the use of Salt Lake County ("County") funds to make certain charitable contributions. The County Attorney filed a counter-motion mirroring those same claims. The trial court granted summary judgment in the Commission's favor. The County Attorney asks this court to reverse the trial court's grant of summary judgment in the Commission's favor. We reverse the ruling that the County Attorney has an attorney-client relationship with the Commission and each individual Commissioner. We also reverse the ruling concerning the charitable contributions. We affirm the ruling on the authority of the Commission to hire independent counsel, as modified in this opinion.

¶ 2 We first recite the facts. The Commission filed a declaratory judgment action pursuant to the Declaratory Judgments Act, section 78–33–1 of the Code. In the complaint, the Commission relied on an August 22, 1996, opinion letter from the County Attorney as setting out their dispute over their relationship and respective roles. In that letter, the County Attorney asserted that he is legal counsel only for the County, not for the Commission or its individual Commissioners, and, therefore, owes a professional duty only to the County. On April 23, 1997, the Commission filed a motion for partial summary judgment.[1] On November 14, 1997, the district court issued its ruling.

¶ 3 The court first examined the attorney-client relationship between the Commission and the County Attorney. The court held that the County Attorney is the legal adviser to the County, to the Commission, and to each individual Commissioner and that the County Attorney has an attorney-client rela-

tionship with the Commission and each individual Commissioner.

¶ 4 Although the court had ruled that independent counsel could be hired for this specific case, the court still was asked to decide whether there were other situations in which the Commission could hire independent counsel. It first stressed that the County should, if at all possible, rely upon the legal services of the County Attorney. But it recognized that situations would arise where hiring independent counsel would be necessary, and it enumerated some of them.[2] The trial court further ruled

if the County Attorney is disqualified by a conflict of interest, refuses to provide the requested legal representation, withdraws from representation (whether for legitimate reasons or not), or is in any way unable or unwilling to provide the necessary legal counsel, the County Commission cannot be left without options to obtain necessary counsel to fulfill its obligations.

¶ 5 As for the charitable contribution issue, the court declined to address it because the dispute was too "factually intensive." On January 5 and 9, 1998, an evidentiary hearing was held on that issue. The court then held that the charitable contributions made by the Commission were valid expenditures. The court recognized that the County had a history of making contributions with County funds to various organizations to fulfill its welfare obligations. The Christmas In April program, Good Samaritan Program, and Utah Issues Poverty Conference had made requests for such contributions under the County's governing "Policy 1200." This policy sets forth the application procedure for entities that are seeking contributions. The court found that the contributions in question

---

1. A few days after oral argument on the cross-motions for summary judgment, the County Attorney filed a motion for leave to file a counterclaim against the Commission. The trial court granted his motion. The counterclaim sought a declaratory judgment on the same issues that were raised in the County Attorney's partial motion for summary judgment.

2. The court provided a illustrative, but not exhaustive list of these potential situations: a dispute and/or lawsuit between the County Attorney and Commission; litigation against the County which is premised on the County Attorney's mis-

conduct; the County Attorney advocating a position contrary to the Commission, or refusing to advocate the Commission's position; the County Attorney refusing to produce an ordinance requested by the Commission; any expressed unwillingness by the County Attorney to act as counsel for the Commission and to follow instructions of the Commission as a client; the unavailability of the County Attorney; the County Attorney's refusal to follow the Commission's directive in any lawsuit; and the County's Attorney's refusal to provide requested legal advice.

were to be used for a specific purpose—to benefit County residents or others that the County owes a social services responsibility to. Furthermore, the court found that each of these three organizations had received funds before and had always accounted for the use of these grants.

¶ 6 The trial court then held that the statutory and case law relied upon by the County Attorney in opposing these expenditures were not applicable. First, the court held that section 17–4–4 of the Code, which provides that the County may not "lend its credit" or "appropriate money in aid of any private enterprise," does not apply here. Utah Code Ann. § 17–4–4 (1995). The court concluded that the term "enterprise" did not apply to the charitable organizations in question, and it found that the contributions were not being paid to benefit the organizations. The court further concluded that the County Attorney's reliance on our cases of *Sears v. Ogden City*, 533 P.2d 118 (Utah 1975), and *Municipal Building Authority v. Lowder*, 711 P.2d 273 (Utah 1985) was misplaced. Both cases dealt with laws on the transfer of municipal property, and the court held that a transfer of "property" was not at issue. Rather, the issue was the Commission's ability to "raise and spend revenue." And the court found this a legitimate expenditure of revenue to accomplish a governmental purpose. The court reasoned that the County has an obligation to provide for the welfare of its residents, and even some non-residents, and the agencies receiving the contributions did this. Therefore, these contributions were an acceptable way to accomplish the governmental ends. Finally, the court concluded that Policy 1200—Salt Lake County's procedures for contributions to charitable organizations—was complied with.

¶ 7 The County Attorney now appeals, contending that the trial court erred in issuing an improper advisory opinion and in ruling that: (i) an attorney-client relationship existed between the County Attorney and the Commission, as well as each individual Commissioner; (ii) the Commission could hire independent counsel in situations other than a conflict; and (iii) the charitable contributions were lawful expenditures.

¶ 8 We first state the appropriate standard of review. Summary judgment is appropriate only when no genuine issues of material fact exist and the moving party is entitled to judgment as a matter of law. *See* Utah R. Civ. P. 56(c). "Because entitlement to summary judgment is a question of law, we accord no deference to the trial court's resolution of the legal issues presented." *K & T, Inc. v. Koroulis*, 888 P.2d 623, 627 (Utah 1994) (citations omitted).

¶ 9 The County Attorney first contends that the lower court's holdings amount to improper advisory opinions. He bases this argument primarily on the ground that the trial court made no findings of fact in ruling on defendant's motion to strike and cross-motions for partial summary judgment, which he contends is required by Utah Rule of Civil Procedure 56(d). Rule 56(d) instructs the trial court to "make an order specifying the facts that appear without substantial controversy" in cases not fully adjudicated on motion, and that require a trial on disputed issues of material fact. Utah R. Civ. P. 56(d). Here, no trial was necessary to adjudicate any issue of material fact. Instead, the trial court simply stated that it would rule on the charitable contribution issue, if the parties desired, after an evidentiary hearing to adduce the facts. This evidentiary hearing was not a trial on contested facts, and therefore Rule 56(d) does not apply.

¶ 10 The appropriate rule to turn to for guidance in this situation is Rule 52(a) of the Utah Rules of Civil Procedure. It provides that "[t]he trial court need not enter findings of fact and conclusions of law in rulings on motions, except as provided in Rule 41(b).[3] The court shall, however, issue a brief written statement of the ground for its decision on all motions granted under [Rule 56]." Utah R. Civ. P. 52(a). In the present case, the trial court clearly laid out the grounds for its Rule 56 summary judgment rulings, al-

---

**3.** Rule 41(b) of the Utah Rules of Civil Procedure directs the trial court to make findings of fact when it rules on an involuntary dismissal motion and renders judgment on the merits against the plaintiff, and therefore is not applicable in this case. *See* Utah R. Civ. P. 41(b).

though it is true that its first order on the cross-motions for partial summary judgment contained no findings of facts. The second ruling and order on the charitable contribution issue did contain findings of fact and conclusions of law, although they were not technically required. Therefore, the trial court followed the Utah Rules of Civil Procedure.

¶ 11 Alternatively, the County Attorney claims that the declaratory judgment itself was an advisory opinion. The County Attorney contends, in effect, that there was no justiciable controversy before the court on the general question of the attorney-client relationship between the Commission, the County, and the County Attorney. Therefore, when the trial court generally addressed the nature of the relationship and hypothesized various situations that might arise, the court was acting improperly. We reject this contention and note that it is in direct conflict with the position the County Attorney took below.

¶ 12 The Utah Declaratory Judgments Act, the relevant statute here, specifically provides that it is "remedial" and that "its purpose is to settle and to afford relief from uncertainty and insecurity with respect to rights, status and other legal relations; and [it] is to be liberally construed and administered." Utah Code Ann. § 78–33–12 (1996). We accordingly read this section as allowing for a wide interpretation of what constitutes a "justiciable controversy." For there to be a justiciable controversy, we have held it is sufficient if: (i) the parties are adverse; (ii) the party seeking relief has or asserts a bona fide claim; and (iii) the issues are ripe for adjudication where it appears "there is an actual controversy, or that there is a substantial likelihood that one will develop so that the adjudication will serve a useful purpose in resolving or avoiding controversy or possible litigation." *Salt Lake County v. Salt Lake City*, 570 P.2d 119, 121 (Utah 1977). These circumstances exist here.

¶ 13 The County Attorney raised many issues in his declaratory judgment counterclaim which he claimed were in actual dispute. These included:

1) the meaning of section 17–5–213 of the Code;

2) the rights of the Commission to supervise the County Attorney;

3) the rights of the Commission to intervene in the County Attorney's office in personnel matters;

4) the rights of the Commission to distribute charitable contributions;

5) whom the County Attorney owes a duty to as a client; and

6) when the Commission may hire outside counsel to represent it at county expense.

His assertions alone, which he may not withdraw at his convenience, are enough to demonstrate satisfaction of the *Salt Lake County v. Salt Lake City* test. Both parties are definitely adverse, they both assert a bona fide claim, and "there is an actual controversy" or a "substantial likelihood that one will develop" on the issues presented to the court. The record convincingly evidences the fact that these two parties have continually contested the power each entity has over the other and the nature of their legal relationship. This dispute will continue to affect the public interest, and under the Act it is proper to resolve these issues, so that both parties can devote their full energies to the performance of their respective duties.

¶ 14 We now turn to the next issue—the correctness of the trial court's determinations that the County Attorney is the adviser to the County, to the Commission, and to each individual Commissioner and that the County Attorney has an attorney-client relationship with the Commission and each individual Commissioner.[4] In determining the correctness of the trial court's ruling

4. We note here the passage of House Bills 112 and 139, as an attempt by the legislature to clarify the roles of public attorneys and their relationship to other government officials. Since House Bill 112 only concerns county attorneys for counties that have adopted an optional form of county government under Chapter 35a, Optional Form of County Government Act, we find it inapplicable to our discussion here. *See* H.B. 112, 53d Leg., 1999 Gen. Sess. (Utah 1999). House Bill 139 takes effect on January 1, 2001, therefore also having no impact on this decision. *See* H.B. 139, Sec. 10, 53d Leg., 1999 Gen. Sess. (Utah 1999).

as to the nature of the relationship between the Commission and the Commissioners, on the one hand, and the County Attorney, on the other, we address the issues afresh, giving the trial court's conclusions of law no deference. *See State v. Pena,* 869 P.2d 932, 936 (Utah 1994).

¶ 15 We first look to Rule 1.13 of the Utah Rules of Professional Conduct, which directly addresses the issue.[5] Subpart 1.13(f) states that any "lawyer elected ... to represent a governmental entity shall be considered for the purpose of this rule as representing an organization. The government lawyer's client is the governmental entity except as the representation or duties are otherwise

required by law." Subpart 1.13(a) of this rule states that "[a] lawyer employed or retained by an organization represents the organization through its duly authorized constituents." Under these ethical provisions, and in the absence of any contradictory statutes, the County Attorney is the legal adviser only to the County as an entity. The County Attorney represents the County, which acts through the County Commissioners, agents of the County.[6] Critical to the correctness of this analysis is whether there are any statutes that alter the relationship of the County Attorney to the County or add duties beyond those set out in the rules. *See* Utah Rules of Professional Conduct Rule 1.13(f) (1999).

5. Rule 1.13 of the Utah Rules of Professional Conduct provides:

(a) A lawyer employed or retained by an organization represents the organization acting through its duly authorized constituents.

(b) If, in a matter related to the representation of an organization, a lawyer knows that an officer, employee or other person associated with the organization is engaged in, intends to engage in, or refuses to take action in violation of a legal obligation of the organization, or a violation of law that may reasonably be imputed to the organization, and is likely to result in substantial injury to the organization, the lawyer shall proceed as is reasonably necessary in the best interest of the organization. In determining how to proceed, the lawyer shall give due consideration to the seriousness of the violation and its consequences, the scope and nature of the lawyer's representation, the responsibility in the organization and the apparent motivation of the person involved, the policies of the organization concerning such matters and any other relevant considerations. Any measures taken shall be designed to minimize disruption of the organization and the risk of revealing information relating to the representation to persons outside the organization, except as required by law or other rules of professional conduct. Such measures may include among others:

(1) asking reconsideration of the matter;

(2) advising that a separate legal opinion on the matter be sought for presentation to appropriate authority in the organization; and

(3) referring the matter to higher authority in the organization, including, if warranted by the seriousness of the matter, referral to the highest authority that can act in [sic] behalf of the organization as determined by applicable law.

(c) If, despite the lawyer's efforts in accordance with paragraph (b), the highest authority that can act on behalf of the organization insists upon action, or a refusal to act, that is clearly a violation of law and is likely to result in substantial injury to the organization, the

lawyer has "good cause" to resign or withdraw, as appropriate, under Rule 1.16(b)(6).

(d) In dealing with an organization's directors, officers, employees, members, shareholders or other constituents, a lawyer shall explain the identity of the client when it is apparent that the organization's interests are adverse to those of the constituents with whom the lawyer is dealing.

(e) A lawyer representing an organization may also represent any of its directors, officers, employees, members, shareholders or other constituents, subject to the provisions of Rule 1.7. If the organization's consent to the dual representation is required by Rule 1.7, the consent shall be given by a person or entity, other than the individual who is to be represented, properly authorized by the organization.

(f) A lawyer elected, appointed, retained, or employed to represent a governmental entity shall be considered for the purpose of this rule as representing an organization. The government lawyer's client is the governmental entity except as the representation or duties are otherwise required by law. The responsibilities of the lawyer in paragraphs (b) and (c) may be modified by the duties required by law for the government lawyer.

Utah Rules of Professional Conduct Rule 1.13 (1999).

6. The notes to this rule concerning government agencies confirm our reading:

The duty defined by this rule applies to government lawyers, except to the extent the responsibilities of the government lawyers are otherwise controlled by the duties imposed upon them by law. A government lawyer following those legal duties in good faith will not be considered in violation of the ethical standards of this rule. The government lawyer's client is generally the governmental entity itself, but the client relationship may be further defined by statute, ordinance or other law.

Utah Rules of Professional Conduct Rule 1.13 cmt. (1999).

The trial court concluded that the governing statutes broaden the County Attorney's role and also establishes an attorney-client relationship between the County Attorney and the Commission. We come to a different conclusion.

¶ 16 We first address section 17–18–2 of the Code, which is entitled "Legal adviser to commissioners." It reads: "The county attorney is the legal adviser of the county. He must attend meetings of the county legislative body when required, and must oppose all claims and accounts against the county when he deems them unjust or illegal." Utah Code Ann. § 17–18–2 (1995). Prior to 1993, this provision stated that "the county attorney is the legal adviser of the board of county commissioners." The 1993 amendment substituted the word "county" for "board of county commissioners." The trial court read this amendment as having expanded the County Attorney's role, making the officer not only the adviser of the Commission, but also of all county officers. The trial court also found support for its view that the County Attorney had an attorney-client relationship with the Commission and individual Commissioners in section 17–18–1.5(6)(c), also enacted in 1993, which directs the County Attorney to "give, when required and without fee, an opinion in writing to county, district, precinct, and prosecution district officers on matters relating to the duties of their respective offices," and in section 17–5–219, which provides that the Commission "may control and direct the prosecution and defense of all actions to which the county is a party."

██ ¶ 17 We find the trial court's analysis flawed. Utah Rule of Professional Conduct 1.13(f) states that an elected attorney represents the entity, "except as the representation or duties are otherwise required by law." The question is whether the statutes in question constitute an exception to the general rule. There is certainly nothing explicit in the statutes suggesting that a county attorney has an attorney-client relationship with each individual commissioner, or with the commission as a group of individuals. On the contrary, the statutes, both before and after 1993, are entirely consistent with the

general rule set forth in Rule 1.13(f): the attorney-client relationship exists between the entity (viz. the county), represented by its agents (viz. the board of county commissioners), and the elected attorney (viz. the county attorney). The substitution of the word "county" for "board of county commissioners" only replaced the name of the agent with the name of the entity. Therefore, we conclude that there is nothing in the statutes that alters the basic relationship established by Rule 1.13. Section 17–5–219 merely states the necessary effect of this relationship—the County Attorney does act under the direction of the Commission, the agent of the entity, when handling litigation to which the entity is a party. As for section 17–18–1.5(6)(c), it may specify duties of the County Attorney relating to officers and agents of the County and its subdivisions, but those duties are in no way inconsistent with the basic scheme of Rule 1.13. The County Attorney has an attorney-client relationship only with the County as an entity, not with the Commission or the individual Commissioners apart from the entity on behalf of which they act.

██ ¶ 18 It therefore follows that as an elected attorney for the County, the County Attorney is obligated to follow his client's instructions. In practical terms, the County Attorney does not have the right to second-guess the agent, so long as the agent is acting within the scope of the agent's legal authority. Our examination of the Utah Rules of Professional Conduct bolsters this view. Nothing in Rule 1.13 gives any elected attorney representing an entity the right to question the entity's choice of legal options. Furthermore, we find that Rule 1.2 of the Rules of Professional Conduct, to which the County Attorney is bound to adhere, instructs that "[a] lawyer shall abide by a client's decisions concerning the objectives of representation ... and shall consult with the client as to the means by which they are to be pursued." Utah Rules of Professional Conduct Rule 1.2(a) (1999). Section 17–5–219 of the Code reiterates this rule, stating that the Commission has the right to "control and direct the prosecution and defense of all actions to which the county is a party." Only

when the County Attorney determines that there is a potential for a violation of law is he given certain limited remedies which are available to a private attorney vis-a-vis his or her client. These include asking for reconsideration, appealing to outside counsel, and then appealing to the highest authority within the entity. *See* Utah Rules of Professional Conduct Rule 1.13(b)(1–3) (1999).[7]

¶ 19 But there are ways in which the County Attorney's relationship with the County and the Commission is different than the relationship of a private attorney with a client insofar as conflicts are concerned. For on occasion, the County Attorney may have a duty to do more than simply inform the client he or she is wrong. The comment from Rule

1.13 of the Utah Rules of Professional Conduct states "[a] lawyer for the government may have a legal duty to question the conduct of government officials and perform additional remedial or corrective actions *including* investigation and prosecution." Utah Rules of Professional Conduct Rule 1.13 cmt. (1999). Section 17–5–206 of the Code further elaborates on this point.[8] Section 17–5–206 states that the County Attorney must be the party to institute a suit in the name of the County against any county officer to recover money that was allegedly illegally disbursed. *See* Utah Code Ann. § 17–5–206 (1995); *see also Snyder v. Cook*, 688 P.2d 496, 497 (Utah 1984). These duties are not the usual duties imposed upon an attorney representing an

7. When the County Attorney finds that he is legally charged to bring an action pursuant to section 17–5–206, we remind him that he is still bound by the ethical obligations under Rule 1.13(b) which dictate how the lawyer for an organization should handle a situation where he has discovered that there may be a violation of law. The County Attorney should take note that "[a]ny measures taken shall be designed to minimize disruption of the organization and the risk of revealing information relating to the representation to persons outside the organization." Utah Rules of Professional Conduct Rule 1.13(b) (1999).

8. We note that this section was amended during the 1999 Utah Legislative session. These changes do not alter our analysis. The old section 17–5–206 read as follows:

Whenever any county legislative body shall without authority of law order any money paid for any purpose and such money shall have been actually paid, or whenever any other county officer has drawn any warrant in his own favor or in favor of any other person without being authorized thereto by the county legislative body or by law and the same shall have been paid, the county attorney of such county shall institute suit in the name of the county against such person or such officer and his official bondsman to recover the money so paid, and when money has not been paid on such order or warrants, the county attorney of such county upon receiving notice shall commence suit in the name of the county to restrain the payment of the same; no order of the county legislative body shall be necessary in order to maintain either of such actions. Utah Code Ann. § 17–5–206 (1996).

The new section 17–5–206 reads:

(1)(a) If a county legislative body, without authority of law, orders any money paid for any purpose, or if any other county officer draws a warrant in the officer's own favor or in favor of any other person without being

authorized to do so by the county legislative body or by law, the county attorney of that county shall request a county attorney from another county to investigate whether an unauthorized payment has been ordered or an unauthorized warrant drawn.

(b) If the county attorney requests a county attorney from another county to investigate under Subsection (1)(a), the county attorney shall deputize the investigating county attorney.

(2) If an investigating county attorney determines that an unauthorized payment has been ordered or that an unauthorized warrant has been drawn, that county attorney may commence and prosecute an action in the name of the county:

(a) if the payment has not been made or the warrant paid, to enjoin the payment of the unauthorized payment or of the unauthorized warrant; or

(b) if the payment has been made or the warrant paid, to recover from the payee or the county officer and the officer's official bondsman the amount paid.

(3) An order of the county legislative body is not necessary in order to maintain an action under Subsection (2).

H.B. 380, Sec. 1, 53d Leg., 1999 Gen. Sess. (Utah 1999). The new section 17–5–206 takes the power of bringing the suit away from the County Attorney. Instead, if the County Attorney suspects that there is a misappropriation of funds, he must request an investigation from a county attorney from another county in the state. If the County Attorney was the attorney for every officer of the county, he would be in a conflict situation any time he took action under either version of section 17–5–206. Instead, in this type of situation, it is the duty of the County Attorney to notify the Commission that his client is the County, he is protecting the public interest, and that it should seek outside counsel to represent it.

entity, but are the unique duties that an elected attorney, such as the County Attorney faces as he carries out his duties. Thus, it is apparent that the County Attorney has a dual role. One is to act as the attorney for the County. The second is to carry out his statutory duties as an elected official. The duties given to the County Attorney may create a conflict among him, the Commission, and the Commissioners that would not usually exist through an attorney-client relationship.

¶ 20 This now leads us to the next question presented to this court. When is it appropriate for the Commission to hire independent counsel to represent its interests, at taxpayer expense? The trial court held that independent counsel can be hired any time the County Attorney is "unwilling or unable" to provide representation. The court ruled that the Commission's power to hire independent counsel is derived from its mandate to govern the County, as both the legislative and executive branches of government.

■ ¶ 21 Although this is a question of first impression for this court, we recognize the generally-held rule that, "where a statute authorizes legal counsel charged with the duty of conducting the legal business of a governmental agency, contracts with other attorneys for legal services are void." *Board of Supervisors of Maricopa County v. Woodall*, 120 Ariz. 379, 586 P.2d 628, 630 (1978); *see also* 10 McQuillan, *Municipal Corporations* § 29.12 (3d ed.1999). Where the public elects an officer who is to perform all duties of an attorney for a governmental entity, they expect that that person will perform all duties within the scope of that office unless disabled from doing so by some ethical or legal rule. This rule prevents those who are agents of the governmental entity, as, for example, county commissioners, from going around the elected attorney when they may not like the legal advice given, or are dissatisfied with the skills of the county attorney.

■ ¶ 22 But there are situations where the county attorney is unwilling or unable to perform his or her duties, and the county cannot be left without representation. An example of such a situation is in *Carbon County v. Hamilton*, 48 Utah 503, 160 P. 765

(1916). There, the county commission hired independent counsel to prosecute the county attorney for not faithfully performing his duties. We held that when "the county attorney is the accused party, *or is otherwise disqualified*, why may not such commissioners employ other counsel and allow them reasonable compensation for their services? If they may not do that, then they cannot discharge the duties imposed on them." *Id.* at 768 (emphasis added). Although *Carbon County* established that it is proper for a county commission to hire independent counsel, it did not spell out when the county attorney could be considered "disqualified." Cases in other jurisdictions provide some guidance as to when a governmental entity or official is free to hire counsel other than the elected one designated by statute. The facts of these cases add little to our discussion, but a fair summary of the cases seems to be that the right to hire outside counsel for any purpose, whether for advice or litigation, arises only when the public attorney "refuses to act or is incapable of acting or is unavailable for some other reason." *Woodall*, 586 P.2d at 631 (citing *Cahn v. Town of Huntington*, 29 N.Y.2d 451, 328 N.Y.S.2d 672, 278 N.E.2d 908, 910 (1972)). A conflict of interest is sufficient to make a public attorney "unavailable" or "disqualified." *See Gesmonde, Pietrosimone, Sgrignari, Pinkus and Sachs v. City of Waterbury*, 231 Conn. 745, 651 A.2d 1273, 1276 (1995). We think that these are reasonable iterations of the general rule applied in our *Carbon County* case.

■ ¶ 23 Returning to the present case, section 17–18–2 of the Code makes the County Attorney the legal adviser of the County. If that designation is to mean anything, then the County must be represented by the elected attorney in all matters falling within the scope of the attorney-client relationship unless that person cannot act, either because of a refusal to do so, an incapacity, or a disqualification, as by a conflict of interest. That means that the Commission cannot hire outside counsel to advise it when it disagrees with the advice of the elected attorney, or when it does not like the manner in which that person performs the duties of the office.

On the other hand, as in *Carbon County*, if the elected attorney cannot or will not fulfill the role assigned by statute as attorney to the governmental entity, then the agents of the entity may retain outside counsel to perform those duties that the elected attorney cannot or will not perform.

¶ 24 The determination of whether an elected attorney "refuses to act, is incapable of acting, or is unavailable for some other reason" obviously is a critical and fact-intensive issue. Leaving this determination in the hands of either party can lead to untoward results. For example, the Commission may want to make a determination that the County Attorney is unable or unwilling to act when the attorney finds the Commission's proposed course of action to be unlawful. On the other hand, the County Attorney may never admit he is unable or unwilling to perform his duties, thereby paralyzing county government.

¶ 25 In the present case, the trial court undertook to discuss at length hypothetical circumstances under which the Commission could permissibly hire outside counsel. We think that any attempt to set out such guidelines is unwise. The exact circumstances that may arise in the future are notoriously hard to predict, and to set out such detailed guidelines is to invite the judicialization of the relationship between all county attorneys and county commissions, something that has commendably been avoided in the past, as evidenced by the paucity of precedent in this area. In the future, should such a dispute come before a trial court, that court should be guided by the principles that underlie our explanation of the nature of the relationship between a county attorney and a county commission, rather than any set of detailed guidelines such as the dicta set out in the trial court's opinion.[9]

█ ¶ 26 It is certain that county attorneys and county commissions will occasionally disagree about whether a county attorney has refused to, is incapable of, or is otherwise unavailable to act as legal counsel for the commission. There are several options for resolving such conflicts. But we want to make it clear that the conflict must be resolved before the Commission may hire independent counsel to fill any void. The County Attorney is the legal representative for the County and cannot be displaced by the Commission without the agreement of the attorney or a formal declaration by an appropriate authority that the attorney is unavailable to act in that capacity.

¶ 27 First and foremost, the parties should attempt to settle the matter among themselves. The Utah Rules of Professional Conduct are reasonably clear about when a conflict exists between a lawyer and a client. Those rules apply equally to public attorneys. Therefore, resorting to them and to opinions construing them should provide much guidance to the parties. And, of course, there are settled mechanisms long used in public attorneys' offices that shield particular attorneys within those offices from conflicts. See *Public Util. Comm'n v. Cofer*, 754 S.W.2d 121, 125 (Tex.1988) (finding state attorneys who represent opposing agencies may be "screened off" from each other); *Washington State Med. Disciplinary Bd. v. Johnston*, 99 Wash.2d 466, 663 P.2d 457, 465 (1983) ("When the performance of any legal duties required of the attorney general presents actual conflicts of interest, a different assistant attorney general can, and should, be assigned to handle those inconsistent functions.").

¶ 28 The second option to resolve conflicts of this type is an appeal to the Attorney General's office. The statutory duties of the Attorney General include the charge to "exercise supervisory powers over . . . county attorneys, . . . give his [or her] opinion in writing and without fee to . . . any county attorney, . . . when required, upon any question of law relating to their respective offices; [and] when required by the public service or directed by the governor, assist any . . . county attorney in the discharge of his [or her] duties." Utah Code Ann. § 67–5–1(6)–(8) (1996). Both a county commission and a county attorney can appeal to the Attorney

---

9. Because the trial court's hypothetical discussion is dicta and of no precedential value, we

have no occasion to pass on its legal correctness.

General to resolve disputes of the sort we are considering today by way of an "opinion in writing." Also, the statute seems to charge the Attorney General with an affirmative duty to intervene in situations where the proper role of a county attorney is at issue, or where there is a question concerning the availability of the county attorney to perform his or her legal duties. Such a duty would seem to flow from the charge to "exercise supervisory powers" and the charge to "assist any . . . county attorney" as "required by the public service." *Id.*

¶ 29 The third and final option is the one followed here: resort to the courts by seeking a declaratory judgment. In such a situation, the trial court is free to take evidence and make any factual findings necessary to frame the controversy and to resolve the dispute. Litigation, however, seems to be the most cumbersome, divisive, and slowest of the methods available to a county commission and a county attorney.[10]

■■■ ¶ 30 The last issue on appeal concerns three specific charitable contributions made by the Commission. They were to the Christmas in April program, the Good Samaritan Program, and the Utah Issues Poverty Conference. The Commission cites to the following statutes, which it claims imposes a duty on it to expend funds to effectuate its duties: Utah Code Ann. §§ 17–5–244, –251, –253 to 55, –271, (1995). While it is true that these statutes give the County the authority to provide welfare and social services, there is no express grant of authority in them that authorizes the disbursal of funds directly to outside organizations or individuals who will, in turn, accomplish those goals. While the Commission claims that these disbursements will flow directly to people in

need, technically the funds will flow from the County to these organizations, not to members of the public. Therefore, we must turn to statutory and case law to determine if these disbursements were proper.

■■■ ¶ 31 Section 17–4–4 of the Code states: "No County shall in any manner give or lend its credit to or in aid of any person or corporation, or appropriate money in aid of any private enterprise." Utah Code Ann. § 17–4–4 (1995). The statute does not differentiate between non-profit and for-profit organizations. The three organizations in question are private enterprises and, because money is being spent, this provision appears to apply. The policy of this section is a strong one, echoed in the Utah Constitution. *See* Utah Const. art. VI, § 29.[11] This policy is aimed at preventing government from in any way using public assets for private purposes. For example, we have held before that "[t]he property owned by a city is held by the city in trust for the use and benefit of its inhabitants and cannot be disposed of by gift without specific legislative authority." *Sears*, 533 P.2d at 119; *see also Lowder*, 711 P.2d at 283 ("[A] county cannot . . . . dispose of public property without receiving adequate consideration."). In *Sears*, this court examined section 10–8–2 of the Code, which deals with the authority of municipalities to dispose of property. *Lowder* examined sections 17–4–3 and 17–5–48 [12] of the Code, which gives the same general powers to the counties that section 10–8–2 gives to municipalities. Although there is no express provision defining the nature of the property transfer in any of these statutes, we have held that such property cannot be disposed without running afoul of this policy unless the transaction is "in good faith and for adequate consider-

---

10. We recognize that to appear before a court to obtain a determination of whether the County Attorney is unable or unwilling to perform his or her duties, the Commission will almost certainly have to retain an attorney for that limited purpose. The question not presented to us and which we do not address today is who will ultimately pay for that representation if the Commission is unsuccessful. We do note, however, that the Commission should not expect the public coffers to unrestrictedly fund its unsuccessful struggle with a county attorney.

11. Article VI, section 29 of the Utah Constitution provides:

> The Legislature shall not authorize the State, or any county, city, town, township, district or other political subdivision of the State to lend its credit or subscribe to stock or bonds in aid of any railroad, telegraph or other private individual or corporate enterprise or undertaking, except as provided in Article X, Section 5.

12. Section 17–5–48 is now codified as Utah Code Ann. § 17–5–242 (1995).

ation." *Sears*, 533 P.2d at 119. Even though *Sears* and *Lowder* concerned the transfer of real property, and this case involves money, their reasoning is fully applicable. The County holds all forms of property and assets in trust for the benefit of its constituents and other individuals expressly designated by statute, and the Commission can expend them only in exchange for fair value. *See id.* Therefore, for the contributions to avoid the statute's ban on transfers "in aid of" a private enterprise, the contributions must have been given for fair value in goods or services. *Id.* And we have also held that "adequate consideration" in the transfer of property must provide "present benefit that reflects the fair market value." *Lowder*, 711 P.2d at 282.

¶ 32 The trial court seemed to conclude that this standard was met when it found that "[e]ach of the payments is intended to achieve a specific result" and that the result "is a benefit to the County, the value of which may well exceed the sum expended, perhaps by a substantial amount." But a general finding that any of the contributions will provide a benefit, without specifying exactly what that benefit is, in present market value terms, is not specific enough to qualify the benefit as adequate consideration. From the facts it is clear that these contributions were not tied to any specific services to be rendered. Absent a detailed showing of the benefits to be obtained from the money given, these transactions run afoul of section 17–4–4.

¶ 33 Finally, we turn to Policy 1200, the County's policy governing contributions.[13] Policy 1200 mandates first that each requested contribution "reflect a valid county public

purpose." It is undisputed that the contributions were made to aid the public welfare and provide social services. Second, if a requested contribution is to be uncompensated, the County must have some specific statutory authority to make the contribution. As we have outlined above, there was no specific statutory authority to give aid to organizations that would provide social services for the County. Therefore, these three contributions cannot meet this affirmative test. The final provision affirmatively states that in cases where "a requested contribution does not fall within the provisions of a specific statutory grant of authority to make an uncompensated donation, it may be processed ... in the form of a contractual arrangement, with consideration flowing to and from the county." Policy 1200, Rule 4.1.3. Here, the three contributions were not processed as contracts for adequate consideration. Therefore, we find that the Commission did not follow its own regulations, and the donations to these organizations are invalid.

¶ 34 In conclusion, we find that the County Attorney only has an attorney-client relationship with the County, and not with the Commission and its individual Commissioners. The Commission cannot hire independent counsel to serve in an advisory capacity, but there are certain circumstances where the hiring of an independent counsel will become necessary. Finally, we find that the charitable contributions to the Christmas in April Program, Good Samaritan Program, and Utah Issues Poverty Conference to have been illegal and contrary to the guidelines established by the County. We, therefore, reverse the rulings concerning the attorney-client relationship and the charitable contri-

---

13. Policy 1200: Salt Lake County: County–Wide Policy on Contributions/Waivers, provides in relevant part:

4.1 Review Process

4.1.1 Every requested contribution under this policy must reflect a valid county public purpose, as set out in paragraph 3.1 above. If a requested contribution does not meet a valid county public purpose, it must be rejected by the Contributions Review Committee.

4.1.2 If a requested contribution meets a public purpose, in order for it to be made in the form of an uncompensated contri-

bution or donation, the county must have specific statutory authority to make such a contribution or donation.

4.1.3 In the event that a requested contribution does not fall within the provisions of a specific statutory grant of authority to make an uncompensated donation, it may be processed, upon the recommendation of the Contributions Review Committee, in the form of a contractual arrangement, with consideration flowing both to and from the county, under the provisions of the county procurement ordinances.

bution issues, and affirm the ruling concerning the hiring of independent counsel, as modified.

¶ 35 Chief Justice HOWE, Associate Chief Justice DURHAM, Justice RUSSON and Judge MEMMOTT concur in Justice ZIMMERMAN'S opinion.

¶ 36 Having disqualified himself, Justice STEWART does not participate herein; Second District Court Judge JON M. MEMMOTT sat.

