2004 UT App 488

ALTERNATIVE OPTIONS AND SER-
VICES FOR CHILDREN, a Utah non-
profit corporation dba Act of Love;
Adoption Center of Choice, Inc., a Utah
corporation; and A TLC Adoption, a
Utah corporation, Plaintiffs and Appel-
lants,

v.

Michael CHAPMAN, in his official capaci-
ty as Deputy Compact Administrator of
the Interstate Compact on Placement of
Children and in his official capacity as
President of the Association of Adminis-
trators of the Interstate Compact on the
Placement of Children; Robin Arnold–
Williams, in her official capacity as Ex-
ecutive Director of the Utah Department
of Human Services; Janice P. Knaphus,
in her official capacity as Licensing Spe-
cialist in the Office of Licensing of the
Utah Department of Human Services;
the Utah Department of Human Ser-
vices, a governmental department of the
State of Utah; Dennis Eshman, in his
official capacity as Manager of the Sec-
retariat Staff of the Association of Ad-
ministrators of the Interstate Compact
on the Placement of Children; the Asso-
ciation of Administrators of the Inter-
state Compact on the Placement of Chil-
dren; and the American Public Human
Services Association, in its capacity as
Secretariat of the Association of Admin-
istrators of the Interstate Compact on
the Placement of Children, Defendants
and Appellees.

No. 20030186–CA.

Court of Appeals of Utah.

Dec. 30, 2004.

Larry S. Jenkins and Richard J. Armstrong, Wood & Crapo LLC, Salt Lake City, for Appellants.

Mark L. Shurtleff, Attorney General, Joel A. Ferre, Craig L. Barlow, Assistant Attorneys General, Paul C. Farr, and Michael W. Homer, Suitter Axland, Salt Lake City, for Appellees.

Before Judges JACKSON, ORME, and THORNE.

## OPINION

ORME, Judge:

¶1 Plaintiffs sought a declaratory judgment regarding the Interstate Compact on Placement of Children and its application to expectant mothers who travel to Utah to deliver their children and place them for adoption. The trial court, concluding Plaintiffs failed to request relief for an alleged violation of their own rights, granted Defendants' motions to dismiss for lack of standing. We affirm in part, but reverse and remand in part.

## BACKGROUND

¶2 The Interstate Compact on Placement of Children (ICPC) is a uniform law that has been enacted by all fifty states, the District of Columbia, and the U.S. Virgin Islands. *See* Secretariat to the Association of Administration of the Interstate Compact on the

Placement of Children, *Guide to the Interstate Compact on the Placement of Children* 2 (2001). Utah has adopted the ICPC, which is codified at Utah Code Ann. § 62A–4a–701 (2000). The purpose of the ICPC is to promote cooperation among the states in the interstate placement of children to ensure that the best interests of children are met. *See* Utah Code Ann. § 62A–4a–701 art. I.

¶ 3 Plaintiffs are three licensed adoption agencies located in Utah: Adoption Center of Choice, Inc.; A TLC Adoption, Inc.; and Alternative Options and Services for Children, which does business as "Act of Love." Act of Love and Adoption Center of Choice have taken this appeal and will be referred to collectively as "Appellants." Appellants inform us they are responsible for protecting the best interests of children who are relinquished to them for adoption. In doing so, they are required to follow certain ICPC regulations intended to ensure that "[e]ach child requiring placement shall receive the maximum opportunity to be placed in a suitable environment and with persons or institutions having appropriate qualifications and facilities to provide necessary and desirable care." *Id.* § 62A–4a–701 art. I(1). It is undisputed that a violation of an ICPC provision can result in the suspension and revocation of an adoption agency's license.

¶ 4 The ICPC provisions are designed to notify the appropriate authorities in the "receiving state"[1] of all the circumstances surrounding the proposed placement. *See id.* § 62A–4a–701 art. III(2). Thus, the "sending agency"[2] is required to provide

the receiving state written notice of the intention to send, bring or place the child in the receiving state. The notice shall contain:

(a) The name, date, and place of birth of the child.

(b) The identity and address or addresses of the parents or legal guardian.

(c) The name and address of the person, agency, or institution to or with which the sending agency proposes to send, bring, or place the child.

(d) A full statement of the reasons for such proposed action and evidence of the authority pursuant to which the placement is proposed to be made.

*Id.* The receiving state is then required to "notify the sending agency, in writing, … that the proposed placement does not appear to be contrary to the interests of the child." *Id.* § 62A–4a–701 art. III(2)(f).

¶ 5 To manage the daily administrative tasks of the ICPC, each state appoints a Compact Administrator and one or more Deputy Administrators. At least as of the time the trial court acted, Michael Chapman was the Deputy Compact Administrator for Utah, with his office located within the Division of Child and Family Services (DCFS), a division of the Department of Human Services; Robin Arnold–Williams was the Executive Director of the Department of Human Services; and Janice P. Knaphus was a Licensing Specialist in the Office of Licensing within the Department of Human Services. These Defendants are collectively referred to as the "Utah Defendants."

¶ 6 The Association of Administrators of the Interstate Compact on Placement of Children (AAICPC) is a private organization based in Washington D.C., the eligible members of which are the ICPC administrators for each state. Dennis Eshman heads the Secretariat Staff of the AAICPC. The American Public Human Services Association (APHSA) is a nonprofit corporation based in Washington D.C. that provides administrative services to various private, public-interest organizations, including the AAICPC.

---

1. "Receiving state" is defined as "the state to which a child is sent, brought or caused to be sent or brought, whether by public authorities or private persons or agencies, and whether for placement with state or local public authorities or for placement with private agencies or persons." Utah Code Ann. § 62A–4a–701 art. II(3) (2000).

2. "Sending agency" is defined as

a party state, officer, or employee thereof; a subdivision of a party state, or officer or employee thereof; a court of a party state; a person, corporation, association, Indian tribe, charitable agency, or other entity which sends, brings, or causes to be sent or brought any child to another party state.
Utah Code Ann. § 62A–4a–701 art. II(2) (2000).

These Defendants are collectively referred to as the "Association Defendants."

¶ 7 The AAICPC issues advisory opinions regarding questions about the application of the ICPC. Opinion # 49, issued by the AAICPC on June 30, 1986, advises that when an "expectant mother crosses a state line as part of the placement plan and arrangement [for the adoption of her unborn child], the transaction should be viewed as an interstate placement," and is therefore subject to the ICPC's notice requirements. On December 3, 2001, Knaphus notified all Utah licensed child placing agencies, including Appellants, that as of November 19, 2001, the Department of Human Services would use Opinion # 49 as guidance and "utilize [this opinion] on all regulatory and licensing actions concerning child placing agencies where expectant mothers residing in another state travel to Utah to give birth and place their child for adoption."[3]

¶ 8 On June 10, 2002, Plaintiffs filed a complaint in state court against Utah Defendants seeking declaratory and injunctive relief from the court. Plaintiffs alleged that "Opinion # 49's interpretation of the ICPC and the consequent requirements defendants have imposed upon [P]laintiffs impair expectant mothers' constitutional rights."[4] Plaintiffs asked the court to declare "that the ICPC does not apply when an expectant mother travels to Utah to give birth in Utah" and place her child for adoption, as well as to enjoin Utah Defendants from enforcing the

ICPC in the case of expectant mothers. Plaintiffs argued that because "[a] significant part of [their] businesses involve non-resident, expectant birth mothers who deliver their babies in Utah for adoption ... [they] will be irreparably harmed if Opinion # 49 is enforced against them."

¶ 9 On August 9, 2002, Plaintiffs filed an amended complaint against Utah Defendants which added specific allegations addressing their own direct injury resulting from Utah Defendants' implementation of Opinion # 49. Specifically, the amended complaint described a situation where Act of Love facilitated an adoption for a mother from Pennsylvania who traveled to Utah to give birth and place her child for adoption. An adoption family was found in Colorado, but due to complications involving approval from the Pennsylvania ICPC administrator—who took the position that Pennsylvania was the sending agency, despite the fact that the baby was born in Utah—the process was significantly delayed, resulting in increased costs for Act of Love. Additionally, Plaintiffs excluded from the amended complaint the allegation in the original complaint that Opinion # 49 infringes on the constitutional right of an expectant mother to travel.

¶ 10 On September 3, 2002, Plaintiffs filed a second amended complaint, naming Association Defendants as additional parties because, after the litigation was commenced, Chapman sought guidance from the

---

3. Although Utah Defendants argue otherwise in claiming there is no real controversy, there is no question Utah Defendants have adopted Opinion # 49 as the rule in Utah. In 2000, Knaphus, on behalf of the Office of Licensing and at Chapman's instruction, cited Act of Love for a licensing violation for failing to obtain prior approval before an expectant mother was brought into Utah to deliver her child. The Office of Licensing withdrew the violation after Act of Love questioned the ICPC's applicability to unborn children. On November 21, 2001, the Department of Human Services wrote to Act of Love advising, in reference to requiring adoption agencies to meet all ICPC requirements before helping expectant mothers travel to Utah, that "the Office of Licensing has been instructed, as of November 19, 2001, to enforce those [ICPC] requirements with regard to all licensed child placing agencies."

Shortly after receiving the December 3, 2001 letter, the original Plaintiffs collectively filed suit

in federal court against Utah Defendants challenging their implementation of Opinion # 49. While the federal action was pending, Utah Defendants stipulated to a preliminary injunction against enforcing the ICPC provisions in the cases of expectant mothers who come to Utah to deliver their children and place them for adoption. However, on March 1, 2002, during the pendency of the federal action and despite the injunction, Knaphus sent a corrective action plan and a finding of a licensing violation to Adoption Center of Choice, stating that it violated the December 3, 2001 letter. The action in federal court was eventually dismissed.

4. Specifically, Appellants claimed in their original complaint that expectant mothers' constitutional rights to travel are impaired if Opinion # 49 is given effect. However, Appellants do not pursue this issue on appeal.

AAICPC. The AAICPC responded, reaffirming its position expressed in Opinion #49. Plaintiffs argue that Chapman's actions and the AAICPC's response make Association Defendants proper parties to the litigation.

¶ 11 On July 1, 2002, Utah Defendants filed a motion to dismiss the complaint for failure to state a justiciable controversy and lack of standing to raise the constitutional rights of expectant mothers. On October 17, 2002, Association Defendants filed their own motion to dismiss, as well as joining Utah Defendants' motion to dismiss, arguing that Plaintiffs failed to state a claim upon which relief can be granted and that Association Defendants' only involvement was to provide Utah Defendants with a nonbinding opinion and advice on the interpretation of the ICPC.

¶ 12 On October 16, 2002, Plaintiffs filed a motion for partial summary judgment asking the court to interpret the ICPC. On February 25, 2003, the court granted Utah Defendants' and Association Defendants' motions to dismiss, determining that "Plaintiffs lack standing because they fail to request relief for an alleged violation of their own constitutional rights. Instead, Plaintiffs predicate their entire allegations on the alleged violation of the rights of non-party expectant mothers." [5] This appeal followed.

## ISSUES AND STANDARDS OF REVIEW

¶ 13 Appellants argue, contrary to the trial court's ruling, that they do have standing to obtain a judicial determination of the applicability of the ICPC to expectant mothers who come to Utah to place their children for adoption. Appellants argue that if they are required to comply with the ICPC provisions when assisting out-of-state mothers to give birth and place their children for adoption in Utah, then failure to do so could result in licensing revocation. Compliance with Utah Defendants' interpretation also could negatively affect their businesses because of the

extra expense entailed. Therefore, Appellants contend they do have standing to seek a declaratory judgment. Whether Appellants have stated a justiciable controversy under the Utah Declaratory Judgment Act is a question of law reviewed for correctness. *See Board of Educ. v. Ward,* 1999 UT 17, ¶ 8, 974 P.2d 824.

¶ 14 Appellants argue that despite the fact the trial court did not interpret the applicability of the ICPC, pursuant to Rule 30(a) this court may nonetheless "pass upon and determine all questions of law involved in the case presented upon the appeal and necessary to the final determination of the case." Utah R.App. P. 30(a). Indeed, "[i]ssues that are fully briefed on appeal and are likely to be presented on remand should be addressed by this court." *State v. James,* 819 P.2d 781, 795 (Utah 1991). This seems especially appropriate with respect to a question of facial statutory interpretation not requiring the taking of evidence. Appellants argue that the ICPC's own definitions preclude its application to the movement of unborn children across state lines. Interpretation of unambiguous statutory language is a question of law reviewed for correctness. *See Bearden v. Croft,* 2001 UT 76, ¶ 5, 31 P.3d 537.

## STANDING

■ ¶ 15 First, Appellants argue that the trial court erred in dismissing their complaint for lack of standing. Appellants assert that they have standing pursuant to the Utah Declaratory Judgment Act, Utah Code Ann. § 78–33–2 (2002), to obtain a judicial declaration regarding the applicability of the ICPC to unborn children. Appellants argue that the ICPC does not apply to unborn children and, therefore, that they should not be required to comply with its provisions when assisting expectant mothers.

¶ 16 The Utah Declaratory Judgment Act allows an action by "[a]ny person . . . whose rights, status or other legal relations are

---

**5.** The trial court's analysis would be accurate if Plaintiffs had not amended their complaint. As earlier indicated in the text, the original complaint did rely all but exclusively on the infringement on expectant mothers' constitutional rights, including the right to travel. However, the amended complaint added allegations concerning the effects Utah Defendants' insistence on adhering to Opinion #49 had on Plaintiffs, including the increase in costs Act of Love had incurred.

affected by a statute, ... contract or franchise, [to] have determined any question of construction or validity arising under the ... statute, ... contract or franchise and [to] obtain a declaration of rights, status or other legal relations thereunder." *Id.* As stated in *Parker v. Rampton,* 28 Utah 2d 36, 497 P.2d 848 (1972), "the very purpose of [a declaratory judgment] [i]s to provide a means for securing an adjudication without the necessity of someone having to suffer damage or get into serious difficulty before he could seek to have his rights determined in court." *Id.* at 851–52.

¶ 17 In order to state a claim under the Act, the Utah Supreme Court has held that four requirements must be met: " '(1) there must be a justiciable controversy; (2) the interests of the parties must be adverse; (3) the parties seeking relief must have a legally protectible interest in the controversy; and (4) the issues between the parties must be ripe for judicial determination.' " *Jenkins v. Swan,* 675 P.2d 1145, 1148 (Utah 1983) (citations omitted).

██ ¶ 18 Under the first *Jenkins* requirement, the Utah Declaratory Judgment Act "allow[s] for a wide interpretation of what constitutes a 'justiciable controversy,' " and the Act itself " 'is to be liberally construed and administered.' " *Salt Lake Co. Comm'n v. Short,* 1999 UT 73, ¶ 12, 985 P.2d 899 (quoting Utah Code Ann. § 78–33–12 (2002)). A justiciable controversy exists when "a conflict over the application of a legal provision [has] sharpened into an actual or imminent clash of legal rights and obligations between the parties thereto." *Redwood Gym v. Salt Lake Co. Comm'n,* 624 P.2d 1138, 1148 (Utah 1981). To determine whether this has occurred, "it must appear either that there is an actual controversy, or that there is a substantial likelihood that one will develop so that the adjudication will serve a useful purpose in resolving or avoiding controversy or possible litigation." *Salt Lake Co. v. Salt Lake City,* 570 P.2d 119, 121 (Utah 1977).

¶ 19 Appellants argue they have stated a justiciable controversy that can be resolved through the declaratory judgment process, and therefore, that the first requirement under *Jenkins* is satisfied. We agree. Appel-

lants stand to be adversely affected by Utah Defendants' decision to implement Opinion # 49 because in order to comply with the ICPC, Utah, as the receiving state, must approve of the child being brought into the state. In order to accomplish this, notice must be given before the child arrives in Utah of the "name, date, and place of birth of the child." Utah Code Ann. § 62A–4a–701 art. III(2)(a) (2000). While noncompliance would violate the ICPC as construed in Opinion # 49, Appellants argue that if a child has not been born then compliance with the notice requirement would be impossible.

¶ 20 Utah Defendants and Association Defendants argue that Appellants have not been adversely affected because they have not suffered any license suspensions or revocations as a result of noncompliance with the ICPC. This argument is without merit. Appellants have been told they must comply and have been threatened with license suspensions if they do not comply. *See supra* note 3. Additionally, Appellants need not have already suffered from a license suspension to be adversely affected. As noted, declaratory judgment is "a means for securing an adjudication without the necessity of someone having to suffer damage or get into serious difficulty." *Parker,* 497 P.2d at 851–52.

¶ 21 The conflict in this case is exactly the kind of situation where a declaratory judgment is appropriate. In fact, an actual conflict, rather than merely a potential controversy, did arise when Utah Defendants sent a letter to Act of Love citing it for a licensing violation for failure to comply with the ICPC's notice requirement in a case involving an unborn child. A declaratory judgment interpreting the pertinent provisions of the ICPC will resolve the issue for the benefit of all affected parties.

¶ 22 The second requirement under *Jenkins,* that the parties' interests must be adverse, is readily satisfied. Both sides seek an interpretation in opposition to the other's interpretation of the ICPC notice provision. Appellants' interpretation is in direct conflict with Utah Defendants' and Association Defendants' interpretation. The disagreement is not academic. Utah Defendants are in the position to regulate and sanction Appellants

for noncompliance with the ICPC, including noncompliance with the ICPC's notice provisions, and have previously taken steps to do so.

¶ 23 The third requirement under *Jenkins* is that the parties seeking relief must have a legally protectible interest in the controversy. Appellants argue that the trial court misunderstood their argument and thought that "they were asserting only the rights of the third-party expectant birth mothers." In its ruling, the trial court dismissed the action based solely on Appellants' lack of standing to raise issues on behalf of expectant mothers and did not address whether Appellants had standing on their own behalf. Appellants do not appeal the trial court's ruling regarding standing on behalf of expectant mothers. Instead, Appellants only contend that they, themselves, have standing to obtain a judicial declaration. A legally protectible interest has been defined as "one that the substantive law recognizes as belonging to or being owned by the [party]." *In re Marriage of Gonzalez*, 2000 UT 28, ¶ 38, 1 P.3d 1074 (internal quotations, citations, and emphasis omitted). As facilitators in the adoption process, Appellants have a legally protectible interest in the outcome of this controversy because their licenses are at risk if they refuse to comply with Utah Defendants' interpretation that the ICPC applies to unborn children.

¶ 24 Under *Jenkins*, the fourth requirement is that the issue is ripe for judicial determination. This occurs when "it appears 'there is an actual controversy, or that there is a substantial likelihood that one will develop so that the adjudication will serve a useful purpose in resolving or avoiding controversy or possible litigation.'" *Salt Lake Co. Comm'n v. Short*, 1999 UT 73, ¶ 12, 985 P.2d 899 (quoting *Salt Lake Co. v. Salt Lake City*, 570 P.2d 119, 121 (Utah 1977)). As already explained, not only is there a substantial likelihood that a controversy will develop in the future, actual controversies have already occurred due to the parties' varying interpretations of the ICPC. "[A]n accrued state of facts as opposed to a hypothetical state of facts," *Salt Lake Co. v. Bangerter*, 928 P.2d 384, 385 (Utah 1996) (internal quotations and

citation omitted), arose when Appellants were told to comply and were threatened with sanctions if they failed to comply.

¶ 25 Therefore, Appellants meet all necessary requirements for a declaratory judgment, and the issue is ripe for judicial determination. We conclude that the trial court was incorrect in determining that Appellants do not have standing to seek a declaratory judgment.

## ASSOCIATION DEFENDANTS AS PARTIES

¶ 26 Association Defendants argue that naming them as parties in the amended complaint was "totally inappropriate" and that the trial court was correct in granting their motion to dismiss the action against them. Association Defendants argue that Appellants have not made a single allegation directly against them, but rather all the actions complained of concern only Utah Defendants.

¶ 27 A defendant may move for dismissal based on a plaintiff's "failure to state a claim upon which relief can be granted." Utah R. Civ. P. 12(b)(6). "A motion to dismiss is . . . appropriate where it appears to a certainty that the plaintiff would not be entitled to relief under any state of facts which could be proved in support of its claim." *Arrow Indus., Inc. v. Zions First Nat'l Bank*, 767 P.2d 935, 936 (Utah 1988). The court is "obliged to construe the complaint in the light most favorable to the plaintiff and to indulge all reasonable inferences in its favor." *Id.*

¶ 28 We agree that Appellants have failed to state a claim against Association Defendants upon which relief can be granted. Mere issuance of a nonbinding opinion does not make Association Defendants appropriate parties to this action. Opinion # 49 does not have the force and effect of law. Appellants are regulated by, and stand to be sanctioned by, Utah Defendants. Utah Defendants might have been influenced by the actions of Association Defendants, but Association Defendants themselves are in no position to regulate Appellants or otherwise affect their rights and status. Utah Defendants are the

ones who have the authority to interpret and enforce the ICPC in Utah. Therefore, we readily agree with the trial court's decision to dismiss Association Defendants and affirm their dismissal.[6]

## INTERPRETING THE ICPC

¶ 29 Appellants request that if this court determines they do have standing, then "the Court should also rule on the legal question of the applicability of the ICPC to the movement of an unborn child." Although the trial court did not address the question, Appellants argue that this court nevertheless "may pass upon and determine all questions of law involved in the case presented upon the appeal and necessary to the final determination of the case." Utah R.App. P. 30(a).

■ ¶ 30 Utah Defendants and Association Defendants take different approaches in responding to Appellants' request for our interpretation of the ICPC's applicability. Utah Defendants argue that once the standing issue is resolved, this court should not interpret the ICPC because Appellants did not preserve the issue for appeal. *See State v. Allen,* 839 P.2d 291, 302 (Utah 1992) (stating that, absent exceptional circumstances, an issue that is raised for the first time on appeal will not be addressed). Utah Defendants argue that Appellants' motion for partial summary judgment, which Appellants contend raised the ICPC interpretation question, was not adequate to preserve the issue for appeal, and therefore, this court "should ignore the [Appellants'] prompting and elect not to interpret the ICPC." In contrast, Association Defendants acknowledge that this court has discretion to resolve the interpretation issue sure to arise on remand. We agree with Appellants and Association Defendants. "Issues that are fully briefed on appeal and are likely to be presented on remand should be addressed by this court." *State v. James,* 819 P.2d 781, 795 (Utah 1991).

¶ 31 "When interpreting a statute, this court looks first to the statute's plain language to determine the Legislature's intent and purpose." *Miller v. Weaver,* 2003 UT 12, ¶ 17, 66 P.3d 592. In doing so, the court will "give effect to the plain language unless the language is ambiguous." *Blackner v. State Dep't of Transp.,* 2002 UT 44, ¶ 12, 48 P.3d 949. " 'When language is clear and unambiguous, it must be held to mean what it expresses, and no room is left for construction.' " *Salt Lake Child & Family Therapy Clinic, Inc. v. Frederick,* 890 P.2d 1017, 1020 (Utah 1995) (quoting *Hanchett v. Burbidge,* 59 Utah 127, 202 P. 377, 380 (Utah 1921)). We follow " 'the cardinal rule that the general purpose, intent or purport of the whole act shall control, and that all the parts be interpreted as subsidiary and harmonious to its manifest object.' " *Faux v. Mickelsen,* 725 P.2d 1372, 1375 (Utah 1986) (citation omitted). "We assume that 'each term in the statute was used advisedly; thus the statutory words are read literally, unless such a reading is unreasonably confused or inoperable.' " *Carlie v. Morgan,* 922 P.2d 1, 4 (Utah 1996) (citation omitted).

■ ¶ 32 "The purpose of the [ICPC] is to inform state authorities of the proposed adoption so they can protect the child's interest by ascertaining and evaluating the circumstances of the proposed placement." *In re Adoption of R.N.L.,* 913 P.2d 761, 764 (Utah Ct.App.1996). The ICPC was designed "to promote '[a]ppropriate jurisdictional arrangements for the care of the children' who cross state lines in the course of interstate adoptions or relinquishments." *Osborne v. Adoption Ctr. of Choice,* 2003 UT 15, ¶ 47, 70 P.3d 58 (quoting Utah Code Ann. § 62A–4a–701 art. I(4) (2000)).

¶ 33 Appellants argue that "[u]nder the plain language of the ICPC, no placement comes within its reach unless it includes the 'placement' of a 'child' across state lines." The ICPC governs the placement[7] of a child

---

**6.** That having been said, the expertise of Association Defendants makes their input appropriate, and their participation has been helpful. As a matter of discretion, we have treated their brief, insofar as it treats issues beyond the propriety of their dismissal, as an amicus brief and have

considered their views. *See* Utah R.App. P. 25; Utah Code Ann. § 77–38–11(2)(a)(ii) (2003).

**7.** "Placement" is defined, in relevant part, as "the arrangement for the care of a child in a family free, adoptive, or boarding home, or in a

when a "sending agency . . . send[s], bring[s], or cause[s] to be sent or brought into any other party state any child for placement in foster care or as a preliminary to a possible adoption." Utah Code Ann. § 62A–4a–701 art. III(1) (2000).

¶ 34 Appellants concede that Utah could regulate prospective placements of unborn children, but insist it clearly has not chosen to do so given how easy it would be to define "child," as used in the ICPC as adopted in Utah, to include the unborn children of expectant mothers.[8] We agree, and readily conclude that any potential ambiguity in the definitional provision is conclusively resolved by the notice provisions of the statute.

¶ 35 Before a child can be placed across state lines for adoption, the ICPC requires the sending agency to comply with every provision in the ICPC, including the requirement that notice be sent to the receiving state indicating "[t]he name, date, and place of birth of the child." *Id.* § 62A–4a–701 art. III(2)(a). Significantly, the phrase is not qualified by phraseology such as "if known." If the ICPC were intended to apply to unborn children as well as children in being, one would expect to see references to *intended* name; *expected* date of birth; and *planned* place of birth. Instead, the ICPC assumes a known name, birth date, and place

of birth—information typically derived from a birth certificate. The ICPC, for better or worse, clearly contemplates applicability only to children who have already been born in another state.[9] *Cf.* Utah Code Ann. § 78–30–15.1 (2002) ("In any adoption proceeding the petition for adoption shall state whether the child was born in another state and, if so, both the petition and the court's final decree of adoption shall state that the requirements of [the ICPC] have been complied with.").[10]

¶ 36 Additionally, the purpose of the ICPC, and of the notice requirement in particular, is to ensure that the appropriate authorities evaluate the child's individual needs and circumstances to make sure that the proposed placement is in the best interest of the child. *See id.* § 62A–4a–701 (2000). If a child is unborn, many of the circumstances surrounding the child are still unknown and cannot be evaluated until after the birth of the child.

¶ 37 Given the plain language of the ICPC as a whole, its purpose, its definition of the word "child," the usual meaning of the word "child," and the fair import of the notice requirement as phrased in the ICPC, we conclude that the ICPC, as adopted in Utah, does not apply to the unborn children of expectant mothers who come to Utah to give birth and place such children for adoption.[11]

---

child-caring agency or institution." Utah Code Ann. § 62A–4a–701 art. II(4) (2000).

**8.** The ICPC defines "child" as "a person who, by reason of minority, is legally subject to parental, guardianship, or similar control." *Id.* § 62A–4a–701 art. II(1). This definition does not specifically include unborn children. Moreover, children *in utero* are not customarily referred to as minors and, as any expectant mother who has admonished her late-term fetus to "quit kicking" can attest, such children are not subject to "parental . . . control" in the usual sense.

**9.** When interpreting statutory language, the court is to look at the "ordinary meaning" of the word, and if the ordinary meaning "results in an application that is neither unreasonably confused, inoperable, nor in blatant contradiction to the express purpose of the statute, it is not the duty of th[e] Court to assess the wisdom of the statutory scheme." *West Jordan v. Morrison*, 656 P.2d 445, 446 (Utah 1982). In *Alma Evans Trucking v. Roach*, 714 P.2d 1147 (Utah 1986), the Utah Supreme Court stated that the "ordinary and usual" meaning of the word "child" is "a child which has been born." *Id.* at 1148.

The United States Supreme Court in *Burns v. Alcala*, 420 U.S. 575, 95 S.Ct. 1180, 43 L.Ed.2d 469 (1975), stated that the "ordinary meaning" of the "word 'child' . . . refer[s] to an individual already born, with an existence separate from its mother." *Id.* at 580–81, 95 S.Ct. at 1184–85.

**10.** Again, if the Legislature intended the ICPC to have the reach now urged by Utah Defendants and Association Defendants, it would have been an easy matter to adjust the phraseology so the statute provided:

In any adoption proceeding the petition for adoption shall state whether the child was born in another state or in this state to a women who, while pregnant, had traveled to this state and, if so, both the petition and the court's final decree of adoption shall state that the requirements of [the ICPC] have been complied with.

**11.** We emphasize that in interpreting the ICPC in accordance with its plain terms, we express no opinion on the applicability of the ICPC, thus interpreted, to particular cases, facts, or circumstances.

CONCLUSION

¶ 38 We conclude that Appellants do have standing to seek a declaratory judgment against Utah Defendants. We agree with the trial court that Appellants failed to state a claim against Association Defendants upon which relief can be granted, and therefore, Association Defendants' motion to dismiss was properly granted. We conclude that the ICPC does not apply to the unborn children of expectant mothers who come to Utah to give birth and place such children for adoption. We remand the case to the trial court for such proceedings, consistent with this opinion, as may now be appropriate.

¶ 39 WE CONCUR: NORMAN H. JACKSON and WILLIAM A. THORNE JR., Judges.